UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS RAMIRO AVILES et al., <br>     Plaintiffs, <br><br> -v- <br><br> S&P GLOBAL, INC. et al., <br>     Defendants. | 17-CV-2987 (JPO) |
| FERNANDO RAUL BENEDETTO et al., <br>     Plaintiffs, <br><br> -v- <br><br> ATC REALTY FIFTEEN, INC. et al., <br>     Defendants. | 17-CV-6087 (JPO) |
| HORACIO NESTOR ACEBEDO et al., <br>     Plaintiffs, <br><br> -v- <br><br> ATC REALTY FIFTEEN, INC. et al., <br>     Defendants. | 17-CV-7034 (JPO) |
| FREDERICO ALVAREZ et al., <br>     Plaintiffs, <br><br> -v- <br><br> ATC REALTY FIFTEEN, INC. et al., <br>     Defendants. | 18-CV-128 (JPO) |
| HECTOR JORGE ARECO et al., <br>     Plaintiffs, <br><br> -v- <br><br> ATC REALTY FIFTEEN, INC. et al., <br>     Defendants. | 18-CV-2416 (JPO) <br><br> OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

In these five related cases, a putative class of investors in three mutual funds seeks relief for losses they suffered after each of the mutual funds transferred the fund's entire portfolio of assets to a bank for far less than its value, resulting in insolvency. In a previous opinion, this Court dismissed some of the claims, leaving, as relevant here, derivative claims brought on behalf of the funds and direct claims arising under foreign law. A subset of the defendants have filed a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings. For the reasons that follow, the motions are granted in part and denied in part.

## I. Background

Because the Court assumes familiarity with the facts of the case as set forth in its prior opinion, *see Aviles v. S & P Global, Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019), the following recitation provides only those facts that are particularly relevant to this Opinion and Order. These facts are taken from the operative complaint (Dkt. No. 175 ("Compl.")) and are assumed true for purposes of this motion for judgment on the pleadings.

Plaintiffs in these five cases are investors who lost millions of dollars after purchasing shares in the Lifetrade Fund, B.V., LTrade Plus Ltd., and LTrade Fixed Capital (BVI) Ltd (collectively, "Lifetrade"), which are three mutual funds that deal in life-insurance policies. (Compl. ¶¶ 18, 38–40.) Because of financial difficulty, in 2008 Lifetrade entered into an agreement with a predecessor to Wells Fargo Bank, N.A. ("Wells Fargo") that, as amended, assured Lifetrade a $500 million credit line secured by its assets. (Compl. ¶¶ 114–15.) Under the agreement, failure to pay back any advances by June 15, 2012, would result in default and foreclosure on Lifetrade's portfolio of life-insurance policies. (Compl. ¶ 114.)

Lifetrade eventually defaulted on its obligations under the agreement. (Compl. ¶¶ 131–32.) Accordingly, Wells Fargo sought a settlement agreement in which it would obtain

2

Lifetrade's life-insurance policies. Wells Fargo negotiated such an agreement with two Lifetrade executives, Roy G. Smith and John Marcum, under which Lifetrade agreed to transfer its entire portfolio of life-insurance policies to a subsidiary of Wells Fargo. (Compl. ¶ 134.) Smith and Marcum agreed to this settlement agreement out of fear that they would be personally liable to Wells Fargo for Lifetrade's debt under Curaçaoan law. (Compl. ¶ 140.) The agreement entirely wiped out Plaintiffs' investments in Lifetrade. (*Id.*) At the time, however, Smith and Marcum gave no notice to Lifetrade investors that the settlement had occurred. (Compl. ¶ 139.)

Lifetrade investors first learned of the settlement agreement in 2016. (Compl. ¶ 170.) Litigation ensued. In 2017 and 2018, Plaintiffs initiated these five actions — "identical in virtually all material respects," *Aviles*, 380 F. Supp. 3d at 254 — bringing a bevy of state, federal, and foreign law claims. In 2019, this Court partially granted a motion to dismiss, leaving intact, as relevant here, claims for unconscionability and aiding and abetting a breach of fiduciary duty, brought derivatively on behalf of Lifetrade (Compl. ¶¶ 190–98, 247–63), and direct claims brought under Argentine and Japanese law. *See id.* at 307–09. Defendants were instructed to answer these remaining claims. *See id.* at 309.

One set of Defendants — the Wells Fargo Defendants[1] — filed an answer and moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. Nos. 127–128.) Plaintiffs then amended the complaint to bring new foreign-law claims. (Dkt. No. 175.) The Wells Fargo Defendants moved to dismiss the new claims under Federal Rule of Civil Procedure 12(b)(6) and to strike the claims under Federal Rule of Civil Procedure 12(f). (Dkt. No. 209.)

---

[1] The Wells Fargo Defendants are Wells Fargo Bank, N.A., Wells Fargo Bank Northwest, N.A., Wells Fargo Delaware Trust Company, N.A., and ATC Realty Fifteen, Inc. (Dkt. No. 129 at 1.)

Plaintiffs opposed this motion and, in the alternative, sought leave to amend the complaint to include the new claims. (Dkt. No. 215.)

## II. Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Federal Rule of Civil Procedure 12(c) authorizes the Court to grant judgment on the pleadings "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). The movant must show that she "is entitled to judgment as a matter of law." *Burns Int'l Sec. Serv., Inc. v. Int'l Union, United Plant Guard Workers*, 47 F.3d 14, 16 (2d Cir. 1995). To determine whether the movant has made this showing, the Court applies the "same standard" it would apply to a motion to dismiss, "'accept[ing] all factual allegations in the complaint as true and draw[ing] all reasonable inferences' in favor of the counter-claimant." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).

## III. Discussion

Plaintiffs' surviving claims against the Wells Fargo Defendants encompass both derivative common-law claims and direct foreign-law claims. The Wells Fargo Defendants have moved under Rules 12(b)(6), 12(c), and 12(f). Each set of claims is discussed in turn.

## A. Derivative Common-Law Claims

Plaintiffs, on behalf of Lifetrade, first bring common-law claims against the Wells Fargo Defendants. (Compl. ¶¶ 190–98, 247–63.) Plaintiffs seek rescission of the settlement agreement between Lifetrade and the Wells Fargo Defendants on the ground of unconscionability. Plaintiffs also seek recovery from the Wells Fargo Defendants for aiding and abetting Smith and Marcum's plot to execute the settlement agreement and to conceal its terms from Plaintiffs.

In response, the Wells Fargo Defendants argue that they are entitled to judgment on these claims because of the *in pari delicto* doctrine, under which "the courts will not intercede to resolve a dispute between two wrongdoers." *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010). In the context of corporate law, the doctrine bars a company that has committed wrongdoing from suing another party who has participated in the wrongdoing. *See id.* at 950–52. Here, under traditional principles of agency law, the wrongful acts of Smith and Marcum would ordinarily be imputed to Lifetrade. *Id.* at 950. Thus, the Wells Fargo Defendants argue, Plaintiffs are barred from bringing claims on behalf of Lifetrade (a wrongdoer) against the Wells Fargo Defendants (another wrongdoer).

But there is a relevant exception. The *in pari delicto* doctrine has no application if the agent of the company has "*totally abandoned*" the company's interests and is acting "entirely for h[er] or another's purposes." *Id.* at 952 (quoting *Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828, 830 (N.Y. 1985)). The agent's conduct must constitute something akin to "outright theft or looting or embezzlement." *Id.* If this "adverse-interest" exception applies, then the agent's acts are not imputed to the company, and shareholders may pursue a derivative action on behalf of the company against the third-party wrongdoers. *See id.*

To prevail under the *in pari delicto* doctrine, then, the Wells Fargo Defendants must show that the adverse-interest exception lacks application. The pleadings, however, indicate the

5

opposite. This Court has already determined, in a prior opinion, that "[t]he complaint establishes that this exception could plausibly apply here." 380 F. Supp. 3d at 302. Specifically, the complaint "alleges that Lifetrade could have . . . h[eld] the Wells Fargo Defendants to the foreclosure procedures . . . set out in the [original] Loan Agreement," which would have resulted in "hundreds of millions of dollars . . . flow[ing] back into Lifetrade's coffers." *Id.* Rather than pursuing this possibility, Smith and Marcum, "motivated by personal concerns, . . . elected to negotiate a *new* agreement — the Settlement Agreement — that . . . produced no . . . benefit for the company." *Id.* Given these factual allegations, this Court denied Defendants' Rule 12(b)(6) motion to dismiss under the *in pari delicto* doctrine. *See id.*

The Wells Fargo Defendants now seek, in essence, reconsideration of that decision. "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006). And although a litigant is "permitted" to bring successive motions challenging the sufficiency of a claim, first under Rule 12(b)(6) and then under Rule 12(c), 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1385, at 483 (3d 2004), a Rule 12(c) motion for judgment on the pleadings that challenges the sufficiency of a complaint on the same ground as an already-denied Rule 12(b)(6) motion to dismiss should meet an identical fate. *See, e.g.*, *Adamou v. Doyle*, No. 12-CV-7789, 2017 WL 5508916, at *2 (S.D.N.Y. Mar. 9, 2017), *rev'd on other grounds*, 707 F. App'x 745 (2d Cir. 2018) (summary order). In this case, the Wells Fargo Defendants' motion for judgment on the pleadings cites no new law and adduces no new evidence that would require a different outcome. *Cf. Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 696 (S.D.N.Y. 2011) ("Motions for reconsideration are properly granted only if there is a showing of: (1) an intervening change in

controlling law; (2) the availability of new evidence or (3) a need to correct a clear error or prevent manifest injustice."). Accordingly, the Court declines the Wells Fargo Defendants' request for a second bite at the apple.[2]

The motion for judgment on the pleadings is denied with respect to Plaintiffs' shareholder derivative claims.[3]

### B. Foreign-Law Claims

The Wells Fargo Defendants also challenge Plaintiffs' foreign-law claims, both old and new. They seek judgment on the pleadings on Plaintiffs' previously pleaded foreign-law claims, which arise under Argentine and Japanese law. (Dkt. No. 207 at 4–6.) They also seek dismissal

---

[2] Even if the Court were inclined to revisit its prior decision, it would reach the same conclusion. According to the complaint, if Smith and Marcum had made use of the foreclosure provisions in the original Loan Agreement, Lifetrade would have been left with millions of dollars. (Compl. ¶ 133.) Instead, Smith and Marcum — motivated by fear that they would be held personally liable for Lifetrade's debt — opted to negotiate a new agreement with Wells Fargo that absolved them of personal liability but left Lifetrade insolvent. (Compl. ¶¶ 134, 140.) From those allegations, one can plausibly infer that the new agreement constituted "outright theft or looting or embezzlement," triggering application of the adverse-interest exception. *Kirschner*, 938 N.E.2d at 952.

The Wells Fargo Defendants disagree, arguing that the new agreement, although depriving Lifetrade of millions of dollars, nonetheless benefitted Lifetrade in three ways: by extinguishing Lifetrade's debt without risk of further exposure, by giving Lifetrade a period to buy back the life-insurance policies at issue, and by obligating Wells Fargo to share with Lifetrade the proceeds of any profitable sale of the policies within a year. (Dkt. No. 207 at 6.) The Court is skeptical that any of those relatively speculative benefits outweighs the certain loss of millions of dollars. *Cf. In re Platinum-Beechwood Litig.*, No. 18-CV-6685, 2019 WL 2569653, at *13 (S.D.N.Y. June 21, 2019) ("To hold that any amount of cash received is a benefit, even if that cash pales in comparison to the value of the assets for which it was exchanged, would render the term 'benefit' meaningless."). But, in any event, the Wells Fargo Defendants have merely identified a "question of fact" as to "[w]hether [Lifetrade] retained a benefit from [Smith and Marcum's] fraud." *In re Bonnanzio*, 91 F.3d 296, 303 (2d Cir. 1996). Thus, judgment on the pleadings would be inappropriate.

[3] In their opening brief, the Wells Fargo Defendants also argued that they were entitled to judgment on the common-law claims because Plaintiffs lacked derivative standing. (Dkt. No. 129 at 19–21.) They have since abandoned that argument. (Dkt. No. 207 at 10 n.8.)

of Plaintiffs' newly pleaded foreign-law claims, which also arise under Argentine and Japanese law. (Dkt. No. 210 at 6–11.) For both sets of claims, the Wells Fargo Defendants argue that neither Japanese nor Argentine law applies to this case. Thus, their argument occasions a choice-of-law analysis. Here, "[b]ecause both parties agree that New York choice of law rules govern, for purposes of the . . . motion, this election governs." *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 235–36 (S.D.N.Y. 2002); *see* Dkt. No. 216 at 5; Dkt. No. 219 at 2.[4]

"In the context of tort law, New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Properties Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994). If the conflict involves a rule that is "conduct-regulating," the law of the place of the tort generally governs. *Id.* If the conflict involves a rule that is "loss allocating," however, the choice of law is governed by the principles articulated in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972). *See Padula*, 644 N.E.2d at 1003.

Here, as the parties agree, the rule is conduct regulating. (*See* Dkt. No. 177 at 17; Dkt. No. 207 at 4.) Accordingly, the law that governs is *lex loci delicti* — that is, the law of the place of the tort. *See Padula*, 644 N.E.2d at 1002. Ordinarily, in tort cases, "both the wrong and the injury t[ake] place" in the same jurisdiction, which renders the *locus delicti* obvious. *Babcock v. Jackson*, 191 N.E.2d 279, 280 n.2 (N.Y. 1963). But where, as here, the wrongful conduct and

---

[4] The Wells Fargo Defendants initially raise (*see* Dkt. No. 207 at 4; Dkt. No. 210 at 8), and then seemingly abandon (*see* Dkt. No. 219 at 2–7), the contention that because this Court's jurisdiction is premised on the Edge Act, 12 U.S.C. § 632, federal choice-of-law rules apply. Although that was once the approach taken "[i]n decades past," the Second Circuit has since recognized that "the Supreme Court's curtailment of federal common lawmaking . . . casts doubt on the durability of the[] [prior] approach." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 n.5 (2d Cir. 2015). In any event, the Court need not decide the issue because the Wells Fargo Defendants ultimately appear to accede to the applicability of New York choice-of-law rules.

the injury occur in different places, the Court must determine which of the two jurisdictions is the *locus delicti*. The relevant test, as can be discerned from the body of case law, is the precise nature of the "relation" between "the [wrongful] occurrence" and "the place of injury." Restatement (Second) of Conflict of Laws § 145 cmt. e (1971). When the wrongful conduct has a direct relationship to the locus of the injury, the place of the injury "will usually have a predominant, if not exclusive, concern." *Babcock*, 191 N.E.2d at 284. But when the wrongful conduct has a "purely adventitious," *id.*, or "merely fortuitous" relationship with the locus of the injury, the place of the injury "has a minimal interest," *Dobelle v. Nat'l R.R. Passenger Corp.*, 628 F. Supp. 1518, 1529 (S.D.N.Y. 1986); *see Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 459 (S.D.N.Y. 2015) (noting that application of the law of the place of injury would not "accord[] with the reasonable expectation of both parties" if "the location of the alleged injury [were] a mere fortuity").[5]

Here, the allegedly wrongful conduct of the Wells Fargo Defendants has a "merely fortuitous" relationship with the jurisdictions in which the injuries occurred. The Second Circuit has held that this will usually be the case for conduct-regulating rules, as the place of the wrong will "generally [have] superior 'interests in protecting the reasonable expectations of the parties who relied on [the laws of that place] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 51 (2d Cir. 2013) (per curiam) (internal quotation marks omitted) (alteration in original) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d

---

[5] *See also* Restatement (Second) of Conflict of Laws § 145 cmt. e (1971) ("[T]he place of injury will not play an important role in the selection of the state of the applicable law . . . when the place of the injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue.").

9

679, 684–85 (N.Y. 1985)); *see also Niedernhofer v. Wittels*, No. 17-CV-4451, 2018 WL 3650137, at *8 (S.D.N.Y. July 31, 2018) ("[I]n the context of conduct-regulating rules, where the wrongful conduct and the injury occur in different states, the law of the state where the conduct occurred will typically apply."). This is such a case. Here, Wells Fargo never dealt directly with any of the Plaintiffs and did not engage in "deliberate efforts" to cause them harm in Argentina and Japan. *Benefield*, 103 F. Supp. 3d at 459; *cf. Oliver Wyman, Inc. v. Eielson*, No. 15-CV-5305, 2016 WL 5339549, at *4 (S.D.N.Y. Sept. 22, 2016) (Sullivan, J.) (applying the law of the place of injury because the defendants "intended their actions to cause injury to Plaintiff in New York"). Thus, under *Licci*, neither Argentina nor Japan has "the greatest interest in the litigation," *Schultz*, 480 N.E.2d at 684, which means that neither jurisdiction's law governs.

Plaintiffs, of course, argue to the contrary. But Plaintiffs' argument rests on the premise that "the locus of the tort is generally deemed to be the place where harm was inflicted." (Dkt. No. 216 at 7.) That gets it exactly backward. *See, e.g.*, *Niedernhofer*, 2018 WL 3650137, at *8 ("[I]n the context of conduct-regulating rules, where the wrongful conduct and the injury occur in different states, the law of the state where the conduct occurred will typically apply." (citing *Licci*, 739 F.3d at 50)). And the cases cited by Plaintiffs are readily distinguishable. Some involve torts in which the locus of the injury is "not a mere fortuity." *Benefield*, 103 F. Supp. 3d at 459.[6] Others are even further afield.[7] In any event, Plaintiffs fail to disturb the presumption,

---

[6] *See, e.g.*, Dkt. No. 216 at 6 n.13 (citing *Bon Jour Grp., Ltd. v. Elan-Polo, Inc.*, No. 96-CV-6705, 1997 WL 401814 (S.D.N.Y. July 16, 1997).) *Bon Jour Group* involved a claim that the defendant fraudulently induced the plaintiff to sign a contract, causing the plaintiff to suffer economic loss in New York. *See* 1997 WL 401814, at *4. Accordingly, it is a case where the location of the injury was "the result of [the defendant's] deliberate efforts to [induce the plaintiff to sign the contract] in [New York]." *Benefield*, 103 F. Supp. 3d at 459.

[7] *See, e.g.*, Dkt. No. 216 at 6 n.13 (citing *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006).) *White Plains*'s choice-of-law analysis expressly considers where the wrongful conduct took place. Accordingly, "*White Plains Coat & Apron Co.* does not

under *Licci*, that it is the place of the wrongful conduct — and not the place of the injury — that provides the governing law. *See Licci*, 739 F.3d at 50–51.[8]

Because neither Argentine nor Japanese law applies in this action, the Wells Fargo Defendants are entitled to judgment on the previously pleaded foreign-law claims.[9] Similarly, Plaintiffs' newly pleaded foreign-law claims are dismissed for failure to state a claim.[10]

## IV. Conclusion

For the foregoing reasons, the Wells Fargo Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part. The Wells Fargo Defendants' motion to dismiss for failure to state a claim is GRANTED. The Wells Fargo Defendants' motion to strike is DENIED as moot. Plaintiffs' motion for leave to amend is DENIED.

The Clerk of Court is directed to close the following motions:

- Docket Numbers 128, 209, and 215 in *Aviles*, No. 17-CV-2987;
- Docket Numbers 98 and 142 in *Benedetto*, No. 17-CV-6087;
- Docket Numbers 97 and 134 in *Acebedo*, No. 17-CV-7034;

---

stand for the proposition that the location in which a plaintiff was injured has a greater interest than the location in which the wrongful conduct occurred." *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 399 (S.D.N.Y. 2018).

[8] Plaintiffs argue that "Wells Fargo has made no showing that its tortious activities occurred in New York." (Dkt. No. 216 at 7.) Maybe so. But it remains true that Plaintiffs have failed to plead that any wrongful conduct occurred in either Argentina or Japan. Thus, under *Licci*, neither jurisdiction's law applies.

[9] Because the Court's choice-of-law analysis indicates that the Wells Fargo Defendants are entitled to judgment on the pleadings, the Court need not address their alternative argument that neither Argentine nor Japanese law imposed a duty of disclosure on the Wells Fargo Defendants. (*See* Dkt. No. 129 at 11–13.)

[10] Because these claims are dismissed for failure to state a claim, the Wells Fargo Defendants' motion to strike the claims pursuant to Federal Rule of Civil Procedure 12(f) is denied as moot. (Dkt. No. 209.) Similarly, Plaintiffs' motion for leave to amend the complaint to add the claims is denied as futile. (Dkt. No. 215.)

11

- Docket Numbers 77 and 116 in *Alvarez*, No. 18-CV-128; and

- Docket Numbers 78 and 112 in *Areco*, No 18-CV-2416.

SO ORDERED.

Dated: April 6, 2020
      New York, New York

_____
J. PAUL OETKEN
United States District Judge