UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE LIFETRADE LITIGATION                                    17-CV-2987(JPO)

                                                           OPINION AND ORDER

J. PAUL OETKEN, District Judge:

        In these consolidated actions, more than 500 offshore investors ("Plaintiffs") seek relief

after losing all of their investments in three mutual funds.  The funds, which invested in life-

insurance policies, were allegedly funneling investor cash into other enterprises and — when

loose spending predictably led to financial difficulties — ultimately transferred their entire

portfolio of assets to a bank for far less than their value.  Plaintiffs have brought claims against

more than a dozen defendants under state, federal, and foreign law.  One of the defendants, TMF

Curacao N.V. ("Equity Trust"), has filed a motion to dismiss for lack of personal jurisdiction and

failure to state a claim.  For the reasons that follow, the motion is granted.

**I.      Background**

        The Court assumes familiarity with the facts and procedural history of this action, *see*

*Aviles v. S&P Global, Inc.*, No. 17-CV-2987, 2020 WL 1689405 (S.D.N.Y. Apr. 6, 2020); *Aviles*

*v. S&P Global, Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019), and therefore recites only facts

particularly relevant to this Opinion and Order.  These facts are taken from the operative

complaint and presumed true for the purposes of this motion.  (*See* Dkt. No. 290 ("Compl.").)

        In broad outline, Plaintiffs in these five cases are "investors who lost millions of dollars

after purchasing shares in the Lifetrade Fund, B.V., L Trade Plus Ltd., and LTrade Fixed Capital

(BVI) Ltd. (collectively, 'Lifetrade'), which are three mutual funds that deal in life-insurance

policies." *Aviles*, 2020 WL 1689405, at *1.  Plaintiffs implicate multiple parties in the alleged

fraud.  Lifetrade, for example, led Plaintiffs to believe that investing in life insurance would be a

safe bet, while the credit ratings agency S&P Global, Inc., "issued false and misleading ratings"

as to Lifetrade's asset value and performance.  (Compl. ¶ 2.)  21st Services, meanwhile, which

provided life-expectancy evaluations for Lifetrade, "deliberately and falsely understated the life

expectancies of insureds in the Lifetrade portfolio by a factor of at least 22 percent."  (Compl.

¶ 4.)

In 2008, Lifetrade, facing financial difficulties, sought and obtained substantial credit

from a predecessor to Wells Fargo Bank, N.A. ("Wells Fargo").  (Compl. ¶ 114.)  Lifetrade

ultimately defaulted on the loan.  (Compl. ¶ 131.)  It had squandered investors' cash on

overvalued assets, and Lifetrade executives Roy G. Smith and John Marcum "used Lifetrade's

borrowing, and the falsely overvalued policies by 21st Services," to skim up to $200 million in

"self-dealing commissions and fees."  (Compl. ¶ 5.)  In 2012, taking advantage of Smith and

Marcum's fear that they might be held personally liable for the debt, Wells Fargo convinced

Lifetrade to sign a settlement agreement transferring its entire life-insurance portfolio to a Wells

Fargo subsidiary.  (Compl. ¶¶ 6-7.)  Just like that, Plaintiffs' investments were gone.

Plaintiffs learned of the settlement in 2016 and initiated these five actions over the next

two years, bringing a host of claims under state, federal, and foreign law.  (Compl. ¶ 170.)  In

August 2017, as relevant here, Plaintiffs amended their original complaint to add claims against a

new defendant: Equity Trust.  (*See* Dkt. No. 34.)  In subsequent filings, Plaintiffs added

additional details about the company.  (*See* Compl. ¶ 14(a).)  Equity Trust is a Netherland

Antilles limited company that held "numerous titles, positions of trust, and responsibilities in

connection with the Lifetrade [funds]" from 2003 to 2012.  (Compl. ¶ 14(a)(ii).)  In these roles, it

"was involved in the day-to-day activities of Lifetrade," which included coordinating with Lifetrade's New York bankers.  (Compl. ¶ 14(a)(vii).)  Plaintiffs allege that Equity Trust helped dupe investors by authorizing misleading Lifetrade financial statements.  (Compl. ¶ 224(a)(i).)  In addition, Plaintiffs allege that Equity Trust knew and failed to alert investors about Smith and Marcum's self-dealing, as well as their plan to transfer Lifetrade's entire portfolio to Wells Fargo.  (Compl. ¶ 224(a)(xxix).)  Equity Trust has moved to dismiss the claims against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6).  (*See* Dkt. No. 309.)

## II.  Legal Standard

To survive a Rule 12(b)(2) motion to dismiss, a plaintiff "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted).  In the absence of a "full-blown evidentiary hearing on the motion," the plaintiff is required to make only "a prima facie showing" that jurisdiction exists.  *Schultz v. Safra Nat'l Bank of New York*, 377 F. App'x. 101, 102 (2d Cir. 2010) (citation omitted).  At this preliminary stage, such a showing "may be established solely by allegations" pleaded in good faith.  *Aviles*, 380 F. Supp. 3d at 256 (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam)).  Still, jurisdiction must be alleged with "factual specificity"; conclusory statements will not suffice.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).

## III.  Discussion

The Court first considers whether it has personal jurisdiction over Equity Trust.  *See In re Mexican Gov't Bonds Antitrust Litig.*, 412 F. Supp. 3d 380, 387 n.12 (S.D.N.Y. 2019)

("Ordinarily, courts address challenges to personal jurisdiction and other threshold matters before addressing the merits of a claim.").

There are two kinds of personal jurisdiction: general and specific. "General jurisdiction renders a defendant amenable to suit on all claims," while specific jurisdiction covers only claims that "arise from conduct related to the forum." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-CV-1568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)). Both kinds of jurisdiction must comport with due process, which "requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (internal quotation marks omitted).

Equity Trust is plainly not subject to the Court's general jurisdiction. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (internal citation omitted). An individual is subject to general jurisdiction in his or her domicile; a corporation where it "is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). In general, a corporation is "at home" only "where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). Because Equity Trust neither was incorporated in New York nor has its principal place of business here, it cannot be subject to the Court's general personal jurisdiction.

Specific jurisdiction is a more complicated matter.  Absent consent, the Court may exercise personal jurisdiction over Equity Trust "only to the extent that 'a court of general jurisdiction' in New York could do the same.  *Aviles*, 380 F. Supp. 3d at 259 (quoting Fed. R. Civ. P. 4(k)(1)(A)).  For a New York court to take jurisdiction over non-domiciliaries, the exercise of jurisdiction "must (1) fall within the scope of New York's long-arm statute and (2) comport with the U.S. Constitution's Due Process Clause."  *Id.*  Plaintiffs contend that Equity Trust is subject to jurisdiction under N.Y. C.P.L.R. § 302(a)(1) because it "carried out Lifetrade's New York activities."  (Dkt. No. 335 at 7.)  The Court first considers whether the long-arm statute permits personal jurisdiction, and then analyzes whether jurisdiction comports with due process.

Under 302(a)(1), a court may take jurisdiction over non-domiciliary defendants if the claims arise from "the defendants' transaction of business within the state."  *Aviles*, 380 F. Supp. 3d at 260.  This requires evaluating whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within New York."  *Id.* (internal citation omitted).  In addition, there must be "some articulable nexus between the business transacted and the cause of action sued upon."  *Id* (internal citation omitted).  Unfortunately, determining whether the appropriate nexus exists is not straightforward.  As the Second Circuit has acknowledged, "[t]here is no bright-line test for determining whether the 'nexus' is present in a particular case."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 67 (2d Cir. 2012).  In general, jurisdiction will not be justified "where the relationship between the claim and transaction is too attenuated," or where the connection is "merely coincidental."  *Id.* at 66 (internal citations omitted).  But determining the nature of the connection is a fact-specific inquiry, and the point at which the

connection "crosses the line from substantially related to mere coincidence is not always self-evident." *Id.* at 67 (internal quotation marks and citation omitted).

Plaintiffs argue that the Court ought to apply its reasoning in its 2019 opinion in this case to find that Equity Trust is subject to personal jurisdiction under 302(a)(1). There, the Court considered whether it could exercise jurisdiction over Smith, as an officer of Lifetrade. Noting that Lifetrade's use of New York banking channels "to acquire investor cash and to route those funds to Smith and his entities under the guise of commissions and fees … formed an integral part of the architecture of the self-enrichment scheme that left Lifetrade with insufficient liquidity to save its investors' money," the Court concluded that Plaintiffs' claims were sufficiently related to Lifetrade's New York activities so as to confer jurisdiction. *Aviles*, 380 F. Supp. 3d at 262.

It is true that Equity Trust's New York connection bears a superficial similarity to Lifetrade's, most obviously because both entities allegedly used banking channels in New York. But a closer look reveals that Equity Trust's alleged connection to New York is far more attenuated. Plaintiffs allege that Equity Trust coordinated with Lifetrade's New York bankers (Compl. ¶ 14(a)(vii)); maintained bank accounts in New York "for use in connection with the Lifetrade Defendants' business activities" (Compl. ¶ 14(a)(ix)); paid New York banks "for the work that those institutions performed on behalf of the Lifetrade Defendants" (Compl. ¶ 14(a)(xiv)); used New York banks to make payments and authorize transfers to other Lifetrade entities (Compl. ¶ 14(a)(xv)-(xvii)); served as a signatory "authorizing the Lifetrade Defendants' monetary transfers through Bank of New York" (Compl. ¶ 14(a)(xviii)); and accepted payments for its services that were "routed through banking institutions in New York" (Compl. ¶ 14(a)(xx)). None of these allegations contains the "factual specificity" required to adequately

6

plead jurisdiction.  *See Jazini*, 148 F.3d at 185.  Nor do these tangential New York associations
— administrative services performed overseas and largely in the background — appear to form
"an integral part" of Lifetrade's self-enrichment scheme.  *Cf. Aviles*, 380 F. Supp. 3d at 262.

In its 2019 opinion, the Court held that the Court could exercise jurisdiction if "at least
one element of a plaintiff's claim arises from the defendant's New York contacts."  *Id.* at 262
(cleaned up).  But even that relatively permissive standard is not satisfied here.  None of the
claims brought by Plaintiffs against Equity Trust — knowing misrepresentation and concealment
of material facts (Count IX), negligent misrepresentation (Count X), breach of fiduciary duty
(Count XXV), and aiding and abetting breaches of fiduciary duty by Smith and Marcum (Count
XXVI — appears directly related to Equity Trust's use of New York banks, nor do they have
any other obvious New York connection.  The claims for knowing and negligent
misrepresentation concern Equity Trust's alleged authorization of "misleading content … and
material omissions in Lifetrade's financial statements," but there is no suggestion that such
authorization took place in New York.  (*See* Compl. ¶¶ 224(a)(i), 231(a)(vii).)  The claim for
breach of fiduciary duty likewise lacks a New York connection:  Plaintiffs allege that Equity
Trust facilitated "self-dealing transactions through which entities controlled by Equity Trust,
Smith[,] and/or Marcum received substantial undisclosed fees and commissions," but they offer
no additional details about these transactions or where they were carried out.  (*See* Compl.
¶ 338(a).)  If the transactions were carried out in New York — something Plaintiffs do not
specify — the connection would not rise above the "merely coincidental," *Licci*, 673 F.3d at 66
(internal citation omitted), as most large businesses move money through New York at one point
or another.  Finally, the claim for aiding and abetting involves allegations that Equity Trust
authorized money transfers from Lifetrade to Smith and Marcum, helped the executives "conceal

7

their fraudulent self-enrichment scheme," and allowed them to "abandon the Lifetrade portfolio to Wells Fargo." (*See* Compl. ¶ 357.) These allegations are conclusory, and any New York connection remains opaque.

Thus, the connections between Plaintiffs' claims, Equity Trust, and the chosen New York forum are "too tenuous to support the exercise of specific jurisdiction." *SPV*, 882 F.3d at 344. This conclusion is consistent with Second Circuit case law finding the kinds of New York activities alleged here — "contracts incidental to the performance of services by the offshore administrator of an offshore fund" (Dkt. No. 350 at 7) — to be insufficient for the exercise of personal jurisdiction. In *SPV*, for example, the plaintiff, an assignee of a company that had invested money with Bernard Madoff's firm, sought to bring claims against UBS entities that "sponsor[ed], and provid[ed] support for, two European-based feeder funds" that channeled billions of dollars to Madoff. 882 F.3d at 338. As here, the only New York contacts alleged amounted to "a handful of communications and transfers of funds." *Id.* at 345. The Second Circuit held that those "limited contacts [were] insufficient to allow the exercise of specific personal jurisdiction." *Id.*; *see also Hau Yin To v. HSBC Holdings PLC*, No. 15-CV-3590, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) (holding that "communications with and payments to New York merely to ensure compliance with contract terms negotiated and executed outside of New York" was not enough to confer specific personal jurisdiction). The Court also noted the attenuated connection between the defendants' actions and the plaintiff's injuries: The complaint had not alleged that the investing company had "relied on UBS's contacts with the feeder funds" when it decided to invest with Madoff's firm.[1] *SPV*, 882 F.3d at 344-45. This gets to the crux of

---

[1] Here, similarly, Plaintiffs do not allege that they relied on Equity Trust's relationship with Lifetrade in deciding whether or not to invest. Plaintiffs claim that "EQUITY TRUST" was "prominently included on the letterhead of monthly statements next to Lifetrade Management

the issue.  Where, as here, a defendant's New York activities have no plausible connection to the alleged injuries, personal jurisdiction is not proper.

Plaintiffs have therefore failed to allege personal jurisdiction under section 302(a)(1). Because there is no statutory basis for jurisdiction, the Court need not address whether the exercise of personal jurisdiction would comport with due process.  Nor need the Court proceed to any discussion of the merits.  Absent facts demonstrating the existence of personal jurisdiction, the claims concerning Equity Trust must be dismissed.

## IV.   Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiffs' claims against TMF Curacao N.V. ("Equity Trust") are hereby dismissed.

The Clerk of Court is directed to close the motions at Docket Numbers 264 and 309.

SO ORDERED.

Dated: March 29, 2021
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

Company," which allegedly lent "credence to the documents by channeling Equity Trust's reputation as having pioneered trust and fiduciary services."  (Compl. ¶ 224(a)(xvi).)  Without additional factual detail, however, this allegation is conclusory.