USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/24/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LUIS RAMIRO AVILES, et al., | Plaintiffs, | 17-CV-2987 (JPO) (KHP) |
| -v- | | |
| S&P GLOBAL, INC., et al., | Defendants. | |
| FERNANDO RAUL BENEDETTO, et al., | Plaintiffs, | 17-CV-6087 (JPO) (KHP) |
| -v- | | |
| ATC REALTY FIFTEEN, INC., et al., | Defendants. | |
| HORACIO NESTOR ACEBEDO, et al., | Plaintiffs, | 17-CV-7034 (JPO) (KHP) |
| -v- | | |
| ATC REALTY FIFTEEN, INC., et al., | Defendants. | |
| FREDERICO ALVAREZ, et al., | Plaintiffs, | 18-CV-128 (JPO) (KHP) |
| -v- | | |
| ATC REALTY FIFTEEN, INC., et al., | Defendants. | |
| HECTOR JORGE ARECO, et al., | Plaintiffs, | 18-CV-2416 (JPO) (KHP) |
| -v- | | |
| ATC REALTY FIFTEEN, INC., et al., | Defendants. | |

## ORDER ON DISCOVERABILITY OF THE LIFETRADE SERVER

**KATHARINE H. PARKER, United States Magistrate Judge**

The above-captioned consolidated actions involve over 500 foreign investors ("Plaintiffs") who seek relief after losing all of their investments in Lifetrade Fund, B.V. ("Lifetrade") and two related funds (collectively, the "Lifetrade Funds"). The Lifetrade Funds invested in life insurance policies, paying premiums until the person whose life was insured died and then collecting the policy proceeds. According to Plaintiffs, Defendants Roy G. Smith,[1] John Marcum, and S&P Global, Inc. ("S&P") induced Plaintiffs to invest in the Lifetrade Funds and that, all the while, the funds were secretly funneling those investments into other enterprises. In 2012, when the Lifetrade Funds ran out of cash and could not repay amounts owed to Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), Lifetrade entered into a settlement pursuant to which it transferred its entire life insurance investment portfolio to Wells Fargo.

Before the Court is a dispute – chiefly between Plaintiffs and the Estate – concerning the discoverability of a computer hard drive that houses electronically stored information ("ESI") for the Lifetrade Funds, Smith, Marcum, and other individuals and entities associated or affiliated with Smith and/or companies in which he was involved (the "Server"). The Estate currently possesses an electronic mirror image of the Server and has been reviewing the information on it to locate relevant documents responsive to Plaintiffs' (and other parties') discovery requests and producing those responsive documents.[2]

---

[1] Smith passed away after this lawsuit was filed. Robert A. Ruppenthal, Esq. was appointed as the Administrator of Smith's Estate (the "Estate") and was substituted for Smith in this action on June 22, 2020. (*See* ECF Nos. 295-96.)

[2] The Estate's deadline to produce documents is May 31, 2021, with a few limited exceptions. (ECF No. 400.)

Plaintiffs request that the Court compel the Estate to turn over to them (and the other parties in the lawsuit) the entirety of the Server or a forensically sound mirror image of the Server so that all parties can review the entire contents for themselves.  The Estate opposes this request, arguing that the Server contains substantial irrelevant, personal, and confidential material to which Plaintiffs are not entitled.  Further, the Estate asserts that Plaintiffs' request is otherwise contrary to the Federal Rules of Civil Procedure and the applicable case law.  For the reasons set for below, the Court denies Plaintiffs' request.

**BACKGROUND**

Before engaging with the intricacies of the instant dispute, it bears noting that the parties themselves do not fully understand the extent to which the Server was used by various entities and individuals or the chain of custody over the Server's contents since its creation. The Estate made a good faith effort to investigate and provide the Court with an overview of the entities and individuals that exercised control over the Server over the last 15 years based on documents obtained in discovery and witness interviews.  However, given that the Lifetrade Funds have not operated for many years and that Smith – the individual most knowledgeable about the Server – passed away last year, there are still many unknowns.  Thus, the Court must assess the instant dispute with incomplete information, especially as it pertains to who actually owns the Server at this time.

Lifetrade Management Company, N.V. ("Lifetrade Management"), owned by Smith, managed the Lifetrade Funds, initially from Curacao and later from Fayetteville, Georgia. Information about the Lifetrade Funds was therefore stored on computer servers owned and

operated by Lifetrade Management. Sometime in 2008 or 2009, Smith directed a Lifetrade Management IT professional, Matt Simpson, to copy data from a Lifetrade Management server located in Curacao and transfer it to a server in Fayetteville, Georgia.

After the Lifetrade Funds lost all of their assets and Lifetrade Management ceased operations, Smith directed the IT staff of another company that he controlled – the AVS Group – to maintain the Server. At some point thereafter, Smith apparently transferred control of AVS Group to his spouse. According to counsel for the Estate, although AVS was responsible for maintaining the Server, no one at AVS actually accessed the data. They merely ensured the data on the Server was preserved. More recently, AVS's lease at the Fayetteville facility that housed the Server expired. Accordingly, the Estate retained a third-party service provider to pick up and store the Server while this lawsuit remains pending.

The Server contains information about Lifetrade Management employees and other business of Lifetrade Management, not just information about the Lifetrade Funds. It also appears that Smith stored information about certain other business ventures on the Server, including information about Sinomatic Holdings Ltd. and AVS Group. Smith also stored personal financial and tax information and information about a lawsuit in which he was involved regarding AVS Group on the Server. The Estate maintains that the Server is akin to a centralized electronic file cabinet for various entities, all of which had access to the Server and were affiliated with Smith in some capacity at some point over the last 15 or so years. And, given that Smith controlled many of the entities whose information is on the Server, the Estate has effectively controlled access to and dissemination of information on the Server.

Before he died, Smith directed Joe Bruno, an AVS IT employee, to provide his counsel (who are now counsel to the Estate) with a copy of the data from the Server to respond to discovery requests in this action. Based on the Estate's submissions to the Court, Bruno provided an external hard drive containing a copy of the data stored in the "D:\ drive" partition on the Server—where the information relevant to this lawsuit apparently resides.

After the commencement of fact discovery, the parties hired a neutral third-party consultant to assist with extracting information from the Server to ensure no data was lost. All of the information that has been extracted from the Server by the neutral third-party consultant has been provided to Plaintiffs and other Defendants in this action—but the information provided through the neutral is only a portion of the data related to the insurance policies in which the Fund invested and Plaintiffs' investments. As noted above, the Estate is reviewing other ESI on the Server for purposes of identifying and responding to discovery requests. The Estate also will be preparing a privilege log for documents that it contends are privileged as to the Estate.

**MOTION TO COMPEL**

Plaintiffs now request that all of the data on the Server be turned over to them and to the other parties in this litigation. The Estate opposes Plaintiffs' request on various grounds. First, the Estate argues that Plaintiffs have no legal right to the entire Server. Second, the Estate argues that a cursory review of the Server indicates that it contains large swaths of information that are irrelevant to the instant action. Third, the Estate asserts that the Server contains confidential personal information of non-parties as well as other privileged material.

Plaintiffs, on the other hand, contend that the Estate has no ownership interest in the Server and, therefore, lacks standing to object to Plaintiffs' request for production. They assert that because AVS Group turned over the information to Smith, it is clear that AVS Group has no interest in the ESI and has waived any concerns about confidentiality or privilege that may have otherwise attached to the ESI.

## DISCUSSION

### I. *Applicable Law*

The Federal Rules of Civil Procedure establish the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Rule 26 gives a district court broad discretion . . . to impose limitations or conditions on discovery . . . which extends to granting or denying motions to compel or for protective orders on just terms." *Coty Inc. v. Cosmopolitan Cosmetics Inc.*, No. 18-cv-11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020) (cleaned up). Furthermore, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Arg.*, 695 F.3d 201, 207 (2d Cir. 2012).

Parties in civil lawsuits have a well-established, general duty to preserve relevant ESI whenever a party "has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." *See Fujitsu Ltd. v. Fed. Express*

*Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003).

Under Federal Rule of Civil Procedure 34(a), a requesting party is entitled to ESI in the "possession, custody, or control" of its adversary as long as the operative request is within the scope of Rule 26(b).[3] The concept of "control" is construed broadly by courts in this District, and the party advocating for production bears the burden of demonstrating that the other party has control over the documents at issue. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006). In this case, while the parties dispute whether the Estate technically owns the information contained on the Server, they agree that the Estate currently possesses and controls a copy of the information on the Server.

Rule 34(a) does not entitle a party to "a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems." Fed. R. Civ. P. 34(a)(1) (Notes of Advisory Committee on 2006 Amendments). It recognizes that "[i]nspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy." *Id.* That said, "it is well-settled that discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and

---

[3] Rule 34(b) further provides that all requests under 34(a) must be specify the items to be inspected, a reasonable time, place and manner for the inspection, and may specify the form of the ESI to be produced. Fed. R. Civ. P. 34(b)(1). Plaintiffs have not filed a formal request for the Server under Rule 34. However, the Court does not rely on that potential procedural shortcoming in resolving the instant dispute given the Second Circuit's preference for resolving discovery disputes based on the merits.

examine a mirror image of a hard drive." *Schreiber v. Friedman*, No. 15-cv-6861 (CBA) (JO), 2017 WL 11508067, at *5 (E.D.N.Y. Aug. 15, 2017) (cleaned up).

## II. Plaintiffs' Request is Premature

In this case, the issue is not whether the Server should be forensically copied, as mirror image copies already exist, but rather, whether Plaintiffs are entitled to unfettered access to all of the Server information in the Estate's possession and whether the Estate has standing to object to such access.[4] Rule 34(a) provides that a party may serve on any other party a request to produce and permit the requesting party to inspect and copy ESI in the responding party's "possession, custody, or control" to the extent consistent with Rule 26(b). Fed. R. Civ. P. 34(a)(1). Rule 26(b) therefore cabins the information that can be obtained through Rule 34(a) to information that is relevant to the claims and defenses in the case and that is otherwise proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

Because Plaintiffs are requesting information within the possession, custody and control of the Estate pursuant to Rule 34, the Estate has the right to object. Whether the Estate owns all of the information in its possession does not need to be resolved at this juncture because it is undisputed that the Estate must review and respond to Rule 34 document requests as to this information. And, because the information Plaintiffs seek includes information having nothing to do with the claims and defenses in this matter, their request is clearly overbroad.

---

[4] There is no danger of spoliation here. In this regard, the case law cited by the Estate pertaining to whether mirror imaging of computer hard drives was warranted is irrelevant. *See, e.g.*, *Calyon v. Mizuho Sec. USA, Inc.*, No. 07-cv-2241 (RO) (DF), 2007 WL 1468889 (S.D.N.Y. May 18, 2007) (collecting cases); *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008).

Additionally, Plaintiffs submitted the instant request for all information on the Server before the Estate had an opportunity to complete its review of the Server and its production of documents. The Estate's deadline to complete its production is May 31, 2021. It is well-established that "a party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests." *Piccone v. Town of Webster*, No. 09-cv-6266T, 2010 WL 3516581, at *8 (W.D.N.Y. Sept. 3, 2010) (cleaned up); *see also Ameriwood Indus., Inc. v. Liberman*, No. 4:06-cv-524 (DJS), 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006). Such requests should only be granted where the producing party's discovery responses contain "discrepancies or inconsistencies." *Piccone*, 2010 WL 3516581, at *8 (cleaned up). Mere skepticism that an adversary will not produce all relevant information from its electronic files does not warrant Court intervention. *See McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001). Thus, Plaintiffs cannot compel production of information on the Server until they have assessed the Estate's production and found it to be lacking. Furthermore, there is no basis to compel the Estate to turn over information that is not relevant to the claims and defenses in this matter. To facilitate discussion, the Estate is directed to inform Plaintiff which folders within the Server it searched for relevant documents upon its completion of its review.

Plaintiffs' concern that the Estate will "cherry pick" ESI for production and withhold crucial documents that support Plaintiffs' claims is a typical concern for litigants in civil litigation. The Federal Rules of Civil Procedure acknowledge that reality and provide various safeguards to help ensure parties acquire the information needed to assert viable claims and

9

defenses.  First, attorneys have an explicit duty to conduct reasonable searches for documents and to certify that all discovery disclosures are complete and correct under Rule 26(g).  Second, if parties or attorneys fail to comply with their discovery obligations and/or court orders district courts are empowered to impose sanctions in order to offset the prejudice suffered by the opposing party.  *See* Fed. R. Civ. P. 37.  Third, as noted above, Rule 34 itself provides parties with a mechanism to request an inspection of an adversary's ESI repositories.  Additionally, the Estate's attorneys, as officers of the Court and members of the bar, also have ethical obligations with respect to their conduct during discovery.

If, after Plaintiffs review the Estate's production, Plaintiffs uncover inconsistencies or discrepancies in the documents then Plaintiffs should meet and confer with the Estate's counsel and, if not resolved through that process, may submit a motion to compel.  For now, Plaintiffs have not offered any evidence to suggest that the Estate is shirking its discovery obligations with respect to its review of the Server and production of documents.

Finally, the Court briefly notes that it is premature to assess the parties' arguments with respect to the privilege applicable to certain documents located on the Server as the Estate has not yet completed its review and privilege log.

## CONCLUSION

For the reasons set forth above, Plaintiffs' application to compel the Estate to produce the Server is DENIED.

**SO ORDERED.**

DATED: New York, New York
May 24, 2021

_____
KATHARINE H. PARKER
United States Magistrate Judge