

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/31/2022

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUIS RAMIRO AVILES, et al., | 17-CV-2987 (JPO) (KHP) |
| Plaintiffs, | |
| -v- | |
| S&P GLOBAL, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| FERNANDO RAUL BENEDETTO, et al., | 17-CV-6087 (JPO) (KHP) |
| Plaintiffs, | |
| -v- | |
| ATC REALTY FIFTEEN, INC., et al., | |
| Defendants. | |

| | |
|---|---|
| HORACIO NESTOR ACEBEDO, et al., | 17-CV-7034 (JPO) (KHP) |
| Plaintiffs, | |
| -v- | |
| ATC REALTY FIFTEEN, INC., et al., | Defendants. |

| | |
|---|---|
| FREDERICO ALVAREZ, et al., | 18-CV-128 (JPO) (KHP) |
| Plaintiffs, | |
| -v- | |
| ATC REALTY FIFTEEN, INC., et al., | Defendants. |

| | |
|---|---|
| HECTOR JORGE ARECO, et al., | 18-CV-2416 (JPO) (KHP) |
| Plaintiffs, | |
| -v- | |
| ATC REALTY FIFTEEN, INC., et al., | |
| Defendants. | |

1

**OPINION AND ORDER**

**KATHARINE H. PARKER, United States Magistrate Judge**

Presently before this Court is Plaintiffs' renewed motion to compel discovery from the Wells Fargo Defendants. [1]  (ECF No. 599.)  Specifically, Plaintiffs again request that Wells Fargo search their custodial files and produce relevant documents from 2008 to 2009 as to former employees Antonio Com ("Com") and Dan Norton ("Norton").  For the reasons set forth below, Plaintiffs' motion is DENIED.

**BACKGROUND**

On February 16, 2021, Plaintiffs moved to compel the discovery currently requested here (ECF No. 371) which I denied without prejudice.  (ECF No. 400.)  In making that ruling I held that Plaintiffs failed to demonstrate that searching Com's and/or Norton's files, housed at Wells Fargo for the period 2009 and earlier, was proportional to the needs of this case.  I further noted that the dispute was premature because neither Plaintiffs nor the Wells Fargo Defendants knew the role Com or Norton played in originating the loan at issue in this case or their knowledge of delinquencies in payment, if any, prior to leaving Wells Fargo.  I allowed for the possibility of revisiting this issue after the Smith Estate produced relevant files from the Lifetrade server.  Now that the Smith Estate has made its production, Plaintiffs have renewed their motion.

Plaintiffs assert that both Com and Norton during their employment with Wachovia and

---

[1] The Court assumes familiarity with the facts.  For a full recitation see *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019).

subsequently Wells Fargo were personally involved with negotiating and servicing the Lifetrade loan which began in June 2008.  In 2009, both Norton and Com left Wells Fargo and began working for Lifetrade and servicing the Lifetrade loan from the borrower side.  The documents received from the Smith Estate indicate that during their time at Wachovia/Wells Fargo, Com and Norton were "instrumental from the Wachovia side in arranging the line of credit for the fund," "authorized to receive information and negotiate on behalf of The Lifetrade Fund," and Com was a Wachovia contact for Lifetrade.  (Pls. Letter Mot., ECF No. 599.)  Plaintiffs also learned that while at Lifetrade: (1) Com was the "primary contact for negotiations" with Wells Fargo; (2) Com "maintained a close, friendly relationship with Wachovia employees, and discussed issues such as valuation of matured life insurance policies that were pledged to Wachovia;" (3) Com worked with Wells Fargo and Milliman in the valuation of the Lifetrade portfolio of policies; and (4) "Roy Smith wanted 'pressure' on Norton to 'negotiate with Wells [Fargo] for a much better deal' for an extension of the credit facility[.]"  *Id*.

Given this new information, Plaintiffs now seek information under Rule 26 to support their claim that Wells Fargo "wrongfully engaged in a predatory and unlawful 'loan to own' relationship with Lifetrade and Roy Smith" and knew that Lifetrade was a risky loan and charged high and unconscionable interest rates and fees to eventually foreclose when Lifetrade defaulted on the loan.  *Id.*  Plaintiffs also assert that the production received strongly suggests that Com and Norton's inside knowledge, expertise, and rapport were critical in negotiating the loan amendments and the subsequent 2012 settlement agreement.

In response, Wells Fargo asserts that (1) the new information Plaintiffs rely upon is

insufficient to compel production; (2) the discovery sought is irrelevant to the remaining claims against Wells Fargo which are based on the 2012 settlement agreement with Lifetrade; and (3) producing the documents requested "would be unreasonably cumulative, unduly burdensome and disproportionate to the needs of the case." (Def. Opp., pg. 1; ECF 615.)  Defendants assert they have produced the "loan agreement and amendments thereto dating back to 2008 and documents as early as January 2011 for numerous custodians, including those involved with loan extensions after Com and Norton left the bank and who corresponded with Com and Norton at Lifetrade." *Id*.

## DISCUSSION

### 1. Applicable Legal Standard

A district court has "wide latitude to determine the scope of discovery," and "abuses its discretion only when the discovery is so limited as to affect a party's substantial rights." *In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 103 (2d Cir. 2008) (citation omitted).  The Federal Rules provide that:

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added).  Under Rule 37, a party may move for an order to compel discovery, provided the movant has in good faith conferred with the opposing party in an attempt to secure the sought discovery.  *Aetna Life Ins. Co. v. Licht*, 2005 WL 180873, at *1

(S.D.N.Y. Jan. 27, 2005) (citing Fed. R. Civ. P. 37(a)(2)(B)).  Motions to compel made under Rule

37 are left to the sound discretion of the court.  *Antolini v. Thurman*, 2020 WL 6048784, at *2

(S.D.N.Y. Oct. 13, 2020) (citing *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

### 2. Application

Plaintiffs have not shown how Com and Norton's files from 2008-2009 are relevant or

proportional to the claims pending against Wells Fargo.  The remaining claims against the Wells

Fargo Defendants are aiding and abetting breach of fiduciary duty and unconscionability and all

focus on the negotiated settlement of the debt which resulted in Lifetrade surrendering its

portfolio of insurance policies (collateral for the line of credit on which it had defaulted) to

Wells Fargo.  The investors sought alternative financing and assert that the value of the assets

exceeded the debt.  Plaintiffs focus on a series of extensions and increased interest rates

negotiated with Wells Fargo and indicative of Wells Fargo ultimate desire to sink Lifetrade and

get its assets (as opposed to simply collecting on the debt owed to it).  These occurred after

Com and Norton left Wachovia/Wells Fargo.  Moreover, Wells Fargo has already produced the

entire loan file and emails from the Wachovia/Wells Fargo personnel involved in granting the

extensions and negotiating the settlement.  Plaintiffs also have emails between Com and

Norton and Lifetrade regarding the opening of the original line of credit from the Lifetrade files

produced by the Smith Estate.

In sum, the fact that Norton and/or Com were instrumental in arranging and negotiating

the original line of credit on behalf of Wells Fargo does not render their emails from that

period relevant to the remaining claims against Wells Fargo, which all pertain to the 2011-2012

time frame.  *See Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 303, 306 (S.D.N.Y. 2019) (permitting Plaintiffs' unconscionability claim to proceed because the Court cannot "conclude that Plaintiffs will be unable as a matter of law to demonstrate that the Settlement Agreement was the product of a procedurally unconscionable negotiating process" and noting "Plaintiffs claim that the Wells Fargo Defendants aided and abetted Smith and Marcum's fiduciary breach by conspiring with Smith and Marcum to execute the Settlement Agreement and conceal its terms from investors.").  The Court recognizes the broad definition of relevance under Rule 26, which would permit Plaintiff to obtain the complete loan file.  However, this has been produced.  Internal discussions at Wachovia and then Wells Fargo about whether to extend the lone in the first place are at best marginally relevant.  Motive is not an aspect of any claim remaining against Wells Fargo, and the terms of the loan speak for themselves.  And, even if motive were relevant to the claims, the relevant inquiry would be Wells Fargo's motives in extending the time to repay the debt, increasing interest rates and negotiating the settlement—all which occurred after Com and Norton left Wells Fargo.

Even assuming they are marginally relevant, requiring production of these emails is not proportional to the needs of this case in light of the information already produced.  Plaintiffs have the complete loan file and all communications between Lifetrade and Wachovia/Wells Fargo about the loan (including its origination), as well as internal Wells Fargo communications about extensions to the line of credit, increases to interest rates and negotiation of the 2012 settlement — the core conduct at issue.  Plaintiffs are not hampered in the conduct of depositions of Com or Norton, as they have more than sufficient information to ask them about

the loan origination.  In sum, Plaintiffs' arguments fail to persuade the Court to change its prior

finding that the information sought is not proportional to the needs of the case.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to compel (ECF No. 599) is DENIED.

**SO ORDERED.**

DATED:  New York, New York

       January 31, 2022

_____

KATHARINE H. PARKER

United States Magistrate Judge

7