USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/4/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS RAMIRO AVILES, et al., <br><br> Plaintiffs, <br><br> -v- <br><br> S&P GLOBAL, INC., et al., <br><br> Defendants. | 17-CV-2987 (JPO) (KHP) |
| FERNANDO RAUL BENEDETTO, et al., <br><br> Plaintiffs, <br><br> -v- <br><br> ATC REALTY FIFTEEN, INC., et al., <br><br> Defendants. | 17-CV-6087 (JPO) (KHP) |
| HORACIO NESTOR ACEBEDO, et al., <br><br> Plaintiffs, <br><br> -v- <br><br> ATC REALTY FIFTEEN, INC., et al., Defendants. | 17-CV-7034 (JPO) (KHP) |
| FREDERICO ALVAREZ, et al., <br><br> Plaintiffs, <br><br> -v- <br><br> ATC REALTY FIFTEEN, INC., et al., Defendants. | 18-CV-128 (JPO) (KHP) |
| HECTOR JORGE ARECO, et al., <br><br> Plaintiffs, <br><br> -v- <br><br> ATC REALTY FIFTEEN, INC., et al., <br><br> Defendants. | 18-CV-2416 (JPO) (KHP) |

**OPINION AND ORDER**

On October 27, 2021, Plaintiffs filed the present letter motion seeking a court order to: (a) compel S&P to furnish a more detailed privilege log or appoint a special master to conduct in camera review of the withheld documents; (b) compel S&P to produce documents created in 2005 pertaining to the negotiation and origins of its relationship with Lifetrade;[1] and (c) require S&P to identify and produce documents shown to witnesses Sergio Garibian and Winston Chang in preparation for their depositions.

S&P prepared a categorical privilege log, which the parties agreed to at the outset of the litigation. It is modeled on an exemplar categorical privilege log published by the New York City Bar Association. (Def Repl. Letter, ECF No. 572.) Nonetheless, Plaintiffs now say the log is inadequate because it fails to sufficiently identify dates, authors, subject matter, non-attorneys and roles, and Bates numbers for the documents withheld.

As to the depositions of Garibian and Chang, S&P asserts that Plaintiffs' counsel never asked whether any documents refreshed the witnesses' recollection, and caselaw supports its position that the specific documents shown to a witness during preparation sessions are privileged. Nevertheless, S&P represented that each document shown to the witnesses during depositions were produced to Plaintiffs. (Transcript of Oct. 12, 2021 Case Management Conference at 43:7-45:6, ECF No. 558.)

Turning to the deposition testimony, during the deposition of Garibian, held on

---

[1] As the contemplated discovery requested here rests upon the Court granting Plaintiffs' pending motion to amend their complaint (ECF No. 542-43), the Court shall resolve whether S&P must produce documents from 2005 when it rules on the motion to amend.

September 21, 2021, Plaintiffs' counsel asked, "in preparation for this deposition, did you review any documents?" Garibian responded, "Yes, I reviewed some documents with my lawyers." *See* Garibian Deposition Transcript, ECF No. 568, Ex. C.  Plaintiffs' counsel then made clear he was not inquiring to any discussions, rather, the documents reviewed in preparation of the deposition.  Garibian responded "I just reviewed documents with the lawyers to refresh my memory for something that happened 10 years ago – between 10 and 15 years ago."  Defense counsel then said, "[o]bjection to the question and I direct the witness not to answer. The only documents he saw were the ones the lawyers chose to show him."

Similarly, during the deposition of Chang, held on September 27, 2021, Plaintiffs' counsel asked "in preparation for this deposition, have you reviewed any documents or writings?  Chang responded, "[o]nly as it relates to any prep work I may have done with my attorneys."  See Chang Deposition Transcript, ECF No 568, Ex. D.  Plaintiffs' counsel then asked the witness to identify those documents, where defense counsel objected "on the grounds it calls for attorney-client privilege and work product information."

### DISCUSSION

1. **Privilege Logs**

When documents are withheld on the basis of privilege, the Federal Rules of Civil Procedure require the withholding party to "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that, without revealing information itself privileged or protected . . . enable other parties to assess the claim." Fed R. Civ. P. 26(b)(5)(A)(ii).  The privilege log must "establish the essential elements of the

3

privilege," and "provid[e] sufficient detail to permit a judgment as to whether the document[s] [are] at least potentially protected from disclosure."  *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 1968325, at *3 (S.D.N.Y. Mar. 31, 2021) (quoting *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)).

Local Civil Rule for the U.S. District Courts for the Southern and Eastern Districts of New York 26.2(a)(2)(A) explains that such information includes:

> (i) the type of document, e.g., letter or memorandum;
> (ii) the general subject matter of the document;
> (iii) the date of the document; and
> (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other[.]

The Local Rule permits the parties to agree (as they have here) to exchange categorical privilege logs, which group like documents into categories, instead of listing each document individually.

Categorical privilege logs are well-accepted, are presumptively proper in this District, and a "party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the substantive information required by this rule has not been provided in a comprehensible form."  Local Civ. R. 26.2(c).

Still, the party asserting attorney-client privilege or work product protection bears the burden of establishing the privilege's "essential elements"—that the communications at issue were "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."  *In re Aenergy, S.A.,*

4

451 F. Supp. 3d 319, 322 (S.D.N.Y. 2020) (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011)).  Thus, "[a] categorical privilege log is adequate if it provides information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege."  *Rekor Sys., Inc. v. Loughlin*, 2021 WL 5450366, at *1 (S.D.N.Y. Nov. 22, 2021) (quoting *In re Aenergy, S.A.*, 451 F. Supp. 3d at 325-26.

      S&P's privilege log covers 453 withheld documents, divided into five categories, each withheld on the basis of attorney-client privilege and one category also cited work product protection.  For each category, the privilege log includes columns headed "Category Number", "Date Range", "Document Type", "Sender(s)/Recipients(s)/CC(s)/Authors", "Category Description", "Privilege Claimed", "Documents Withheld," "Documents Withheld, Including Families", "Documents Redacted", and "Documents Redacted, Including Families".  Each category also varied in date ranges from four months to five and a half years.  For example, one category covers "[c]ommunications between S&P's internal and external counsel and S&P personnel providing, requesting and/or reflecting legal advice on potential ratings of life settlement securitizations." There are 318 documents in this category.  Additionally, the privilege log identified internal and external counsel in the respective categories, however, it did not specify the roles of other S&P personnel who sent and received communications.

      The ESI protocol agreed upon by the parties and so-ordered by the Court on August 18, 2020, allows each party to produce categorical privilege logs.  (ECF No. 323.)  The relevant portion states:

>The parties have agreed that after a party completes its production of documents in response to an opposing party's request, the responding party will produce a privilege log within a reasonable amount of time in an electronic and easily searchable format. The parties further agree that the privilege logs will conform with the requirements of the Federal Rules of Civil Procedure, and that, in order to promote efficiency and cost reduction, documents can be logged on a categorical basis.

Notably, the ESI protocol does not specify what information is required to be included in the categorical log. Thus, the central question is whether S&P's log provides Plaintiffs with sufficient information for them to assess the nature of the privileges asserted.

Plaintiffs contend that the date ranges for the categories are too wide. They also state that they need to better understand the authors and subject matter of the various communications withheld, as well as the role of the non-attorneys, to reasonably assess whether there is a basis to challenge the privilege assertions.

Though the Court finds that the New York City Bar Association exemplar is more than sufficient for many cases, it is not sufficient as adapted in this case. The Court finds that a date range of more than six months is generally too broad. Where traditional privilege logs are utilized, the producing party must include a date for each document. Local Civ. R. 26.2(a)(2)(A)(iii). Here, category three covers January 11, 2006 to May 13, 2011 and category four covers March 7, 2006 to April 4, 2011, both over five-year periods. These two categories contain 403 of the 453 documents withheld and the time periods are highly relevant to the claims asserted by Plaintiffs against S&P. Thus, although permissible, on balance the broad date ranges do not provide sufficient substantive information to Plaintiffs to assess S&P's privilege assertions. *See U.S. Bank Nat'l Ass'n*, 2021 WL 1968325, at *5 (requiring TAM Parties

6

to provide an accurate date range for its categorical privilege log). Accordingly, absent an agreement between the parties, each category shall not exceed a time period of six months.

Second, the Court finds that identifying the author of each document and related Bates numbers to be burdensome. What Plaintiffs are arguing here upends the idea of a categorical privilege log and would require each document to be logged individually, or at best categorized by author. Plaintiffs fail to identify why the author of each document and Bates numbers are necessary to tip the balance in their favor. *U.S. Bank Nat'l Ass'n*, 2021 WL 1968325, at *5 (citation omitted) ("[P]roportionality is an issue in evaluating privilege logs, just as it is with respect to other aspects of discovery."). Additionally, Bates Numbers are not required to be identified by the Federal Rules or Local Rules. Accordingly, this request is denied.

Third, the Court finds that S&P provides sufficient detail of the subject matter of the privilege it asserts. For example, S&P describe categories as communication "regarding potential ratings of life settlement funds other than the Lifetrade Fund", "regarding potential ratings of life settlement securitizations", and "regarding S&P's rating of the Lifetrade Fund." These are sufficient for the purposes of a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii); *U.S. Bank Nat'l Ass'n*, 2021 WL 1968325, at *3.

Fourth, the Court finds that the non-attorney individuals and their roles should be identified. The roles of the individuals are not privileged and would aid Plaintiffs in assessing the asserted privilege claims. See *Jessore Mgmt. SA v. Brit Syndicate 2987*, 2021 WL 4037849, at *14 (S.D.N.Y. Sept. 3, 2021) (finding defendants' categorical privilege log deficient for failing to sufficiently identify 21 individuals whose communications were asserted to be protected by

the attorney-client privilege). Additionally, S&P bears the burden in establishing that the withheld documents are privileged. *See Id.; Johnson v. Nextel Commc'ns, Inc.,* 2012 WL 3648447, at *4 (S.D.N.Y. Aug. 27, 2012) (quoting *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996) ("[I]f the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.")). Accordingly, S&P shall supplement its privilege log to identify the non-attorneys and their roles. Alternatively, it may provide a list of individuals with their titles as a "key" to the log.

### 2. Deposition Testimony

Rule 612 of the Federal Rules of Evidence provides that writings used to refresh memory for the purpose of testifying, either while testifying or, in the discretion of the court, before testifying shall be produced to facilitate cross-examination. Fed. R. Evid. 612. When a witness' memory is refreshed, the opposing party is "entitled to a full opportunity to establish the extent to which the document has been reviewed by and has assisted witnesses." *Auscape Int'l v. Nat'l Geographic Soc'y*, 2002 WL 31250727, at *2 (S.D.N.Y. Oct. 8, 2002). However, if a witness reviews documents prior to the deposition, instead of using them to refresh their memory during the deposition itself, disclosure is only required where the court in its discretion determines it is necessary in the interests of justice. *Thomas v. Euro RSCG Life*, 264 F.R.D. 120, 122 (S.D.N.Y. 2010) (internal citation omitted). Thus, a party must meet three conditions before it may obtain documents used by a witness prior to testifying:"1) the witness must use the writing to refresh his memory; 2) the witness must use the writing for the purpose of

testifying; and 3) the court must determine that production is necessary in the interests of justice." *Sporck v. Peil*, 759 F.2d 312, 317 (3d Cir. 1985).

Rule 612 must also be balanced against the possibility of unfair intrusion into the attorney-client privilege and work product protection. *See Redvanly v. Nynex Corp.*, 152 F.R.D. 460, 470 (S.D.N.Y. 1993) (internal citation and quotation omitted) ("The potential for conflict that exists between Rule 612, which favors disclosure of materials used to refresh a witness' recollection, and the work-product privilege is resolved by the courts on a case-by-case basis by balancing the competing interests in the need for full disclosure and the need to protect the integrity of the adversary system"). In *Gould Inc. v. Mitsui Mining & Smelting Co.,* the Second Circuit held "where a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected." 825 F.2d 676 (2d Cir. 1987). In *Gould*, the court adopted the ruling in *Sporck*, where the court upheld the assertion of work-product privilege when the plaintiff had made no claim that any documents had been withheld from production, and "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." 759 F.2d 312, 319; see also *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992); *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002,* 318 F.3d 379, 385 (2d Cir. 2003).

However, the court in *Gould* cautioned that this exception should be narrowly construed and its applicability "depends upon the existence of a real, rather than speculative, concern

that the thought processes of [the client's] counsel in relation to pending or anticipated litigation would be exposed." 825 F.2d at 680. "Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386.

Although a close call, the Court finds that S&P's objections were improper to the extent that it will permit Plaintiffs to pose and require the witnesses to answer the following question: ***What documents did you review in preparation for your deposition that refreshed your memory?*** Most witnesses will not be able to identify every document reviewed or even specific documents. Rather, most witnesses may recall only categories of documents. Nevertheless, the Court will permit this one question.

The reasons are as follows. As to the first *Sporck* factor--that the witness must use the writing to refresh his memory-- there is no question that witness Garibian's memory was refreshed. Although Plaintiffs' counsel did not specifically inquire about his memory, Plaintiffs' counsel did ask about his deposition preparation where Garibian responded, "I just reviewed documents with the lawyers to *refresh my memory* for something that happened 10 years ago – between 10 and 15 years ago." Garibian Deposition Transcript, Pg. 13 (emphasis added). By volunteering that his memory was indeed refreshed, Plaintiffs' counsel has a legitimate interest in understanding what documents refreshed his memory and test the veracity of the conclusions drawn.

As to Chang, proper foundation was not established as he did not testify that his memory was refreshed nor did Plaintiffs' counsel ask. However, given that the witness is

10

testifying about events that happened over a decade ago, it is likely that he relied on documents to refresh his recollection.  *See Auscape Int'l v. Nat'l Geographic Soc'y*, 2002 WL 31250727, at *2 (S.D.N.Y. Oct. 8, 2002) (holding that "plaintiffs who were directed not to answer questions concerning whether they reviewed the document, whether it refreshed their recollections, and whether it assisted them in their testimony" be produced for examination and shall answer all such questions because at least one witness already has admitted that the document assisted him in responding to deposition questions.").

As to the second factor--that the witness must use the writing for the purpose of testifying--defense counsel objected before any documents were identified by the witnesses. This requirement was designed "to safeguard against using the rule as a pretext for wholesale exploration of an opposing party's files and to insure (sic) that access is limited only to those writings which may fairly be said in part to have an impact upon the testimony of the witness." *Sporck*, 759 F.2d at 317 (quoting Fed. R. Evid. 612 advisory committee note).  Here, the Court's question – set forth above, adequately protects against invasion of attorney strategy and attorney-client privilege.

As to the third factor, the interests of justice also require disclosure.  As the witnesses are testifying about events more than a decade old, it is reasonable to conclude that they reviewed documents to refresh their memory.  There is sufficient probative value in inquiring about the extent of their recollection and any associated details that may come to light.  *See Thomas v. Euro RSCG Life,* 264 F.R.D. 120, 122 (S.D.N.Y. 2010) (concluding that plaintiff has

waived the privilege by relying on notes in connection with her deposition testimony, and the interests of justice dictate that the notes be produced).

Finally, insofar as S&P has produced all of the documents used to prepare the witnesses, there is no danger of disclosing privileged documents.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion at ECF No. 568 is granted in part and denied in part.  S&P shall also produce updated privilege logs consistent with this opinion by **February 18, 2022**.

**SO ORDERED.**

DATED:  New York, New York
February 4, 2022

_____
KATHARINE H. PARKER
United States Magistrate Judge