UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE LIFETRADE LITIGATION:

This Document Relates to: ALL ACTIONS

17-CV-2987 (JPO)

OPINION & ORDER ADOPTING
REPORT AND RECOMMENDATION

J. PAUL OETKEN, District Judge:

Plaintiffs moved to amend their complaint to add new factual allegations and claims

against Defendant S&P Global, Inc. ("S&P"), pursuant to Federal Rules of Civil Procedure 15

and 16.  Magistrate Judge Katharine H. Parker subsequently conducted a thorough and careful

review and issued a Report and Recommendation (the "Report") recommending that this Court

deny Plaintiffs' motion.  Plaintiffs and S&P both object to the Report.  For the reasons that

follow, the Court adopts the Report in its entirety and denies Plaintiff's motion for leave to

amend the complaint.

I.      **Legal Standard**[1]

When reviewing a report and recommendation by a magistrate judge, a district court

"may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Pursuant to Federal Rule of Civil Procedure 72(a)

and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), "[t]he scope of review by the district

court on appeal from an order of a magistrate judge depends on whether the order is dispositive

or non-dispositive."  *Securitas Elec. Sec., Inc. v. DeBon*, No. 20 Civ. 5323, 2022 WL 633874, at

---

[1] The Court presumes familiarity with the facts and procedural history of the case, as set forth in
*Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 247–55 (S.D.N.Y. 2019), and the Report (*see*
Dkt. No. 665 at 2–10).  For the purposes of this Opinion and Order, the Court accepts as true the
facts alleged in the Fourth Amended Complaint (Dkt. No. 290) and Plaintiffs' proposed amended
complaint (Dkt. No. 544-1).

*1 (S.D.N.Y. Mar. 4, 2022).  A district court's review of a magistrate judge's order on a dispositive matter must be reviewed *de novo* in the face of objection.  In reviewing a magistrate judge's order on a non-dipositive matter in the face of an objection, however, a district court may modify or set aside only any portion of the order that is clearly erroneous or contrary to law.  *Id.* "The Second Circuit has suggested that a denial of a motion for leave to amend warrants the 'clearly erroneous' standard."  *Levy v. Young Adult Inst., Inc.*, No. 13 Civ. 2861, 2016 WL 4402038, at *1 (S.D.N.Y. Aug. 18, 2016) (citing *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007)); *see also Morgan Art Found. Ltd. v. McKenzie*, No. 18 Civ. 4438, 2021 WL 863264, at *1, n.1 (S.D.N.Y. Jan. 22, 2021) ("Since *Fielding*, many courts in this District have applied the clearly erroneous standard to evaluate the denial of leave to amend by a magistrate judge regardless of the grounds for the denial." (internal quotation marks omitted)).  But some courts in this district have nonetheless treated motions to amend as dispositive.  *See, e.g.*, *Covington v. Kid*, No. 94 Civ. 4234, 1999 WL 9835, at *2 (S.D.N.Y. Jan. 7, 1999) (finding that because a magistrate judge's denial of leave to amend the complaint foreclosed potential claims against defendants, it was dispositive).

## II.   Discussion

Because Plaintiffs moved to amend their complaint after the deadline set in the scheduling order, Judge Parker balanced Rule 15(a)'s lenient standard for amending pleadings, Fed. R. Civ. P. 15(a), against Rule 16(b)'s prescription that scheduling orders may be modified only upon a showing of good cause, Fed. R. Civ. P. 16(b).  Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).  And good cause under Rule 16(b) largely turns on the diligence of the moving party.  *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009).  Judge

Parker determined that Plaintiffs had good cause under Rule 16, and that Plaintiffs' proposed amendments would not unduly prejudice S&P and were not the result of undue delay under Rule 15. The Report still recommends denying Plaintiffs leave to amend under Rule 15, however, because Plaintiffs' proposed amendments would be futile. (*See* Dkt. No. 665 at 11–13.)

Plaintiffs object to the Report with respect to its conclusion that Plaintiffs' proposed amendments would be futile. S&P objects to the Report with respect to its conclusion that good cause for amendment exists under Rule 16, as well as its conclusion that Plaintiffs' proposed amendments were not the result of undue delay and would not unduly prejudice S&P. The Court first address Plaintiffs' objections and then turns to S&P's objections.

### A.      Plaintiffs' Objections

Plaintiffs' proposed amendments would add individual claims of fraud and conspiracy against S&P, and derivative claims of conspiracy and aiding and abetting a breach of fiduciary duty against S&P. The proposed amendments also include a derivative claim of unconscionability against S&P. The Report concludes that granting Plaintiffs leave to amend the complaint would be futile for failure to state a claim under Rule 12(b)(6). *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) ("[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."). Plaintiffs object that each of their proposed new causes of action, with the exception of the derivative claim of unconscionability, are sufficiently pleaded and state a claim under Rule 12(b)(6).

Reviewed under a "clear error" standard, Judge Parker's ruling stands. "A magistrate judge's decision is 'clearly erroneous' only if the district court is left with the definite and firm conviction that a mistake has been committed." *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361, 2016 WL 236248, at *1 (S.D.N.Y. Jan. 20, 2016) (internal quotation marks omitted). A decision

is contrary to law if it "fails to apply . . . or misapplies relevant statutes, case law, or rules of procedure." *Golden Horn Shipping Co. Ltd. v. Volans Shipping Co. Ltd.*, No. 14 Civ. 2168, 2015 WL 6684518, at *1 (S.D.N.Y. June 30, 2015). This standard of review is "highly deferential . . . and reversal is appropriate only if [the magistrate judge's] discretion is abused." *Advanced Analytics, Inc. v. Citigroup Glob. Mkts. Inc.*, 301 F.R.D. 47, 50 (S.D.N.Y. 2014).

Having reviewed the parties' filings and Judge Parker's ruling, the Court is left without a "definite and firm conviction that a mistake has been committed." *Indergit*, 2016 WL 236248, at *1. Magistrate Judge Parker considered both parties' arguments and, in a well-reasoned report and recommendation, determined that "S&P . . . demonstrated [that Plaintiffs'] amendments, even assuming the truth of the facts pleaded, would be futile." (Dkt. No. 665 at 13.) There is no reason to depart from this determination, particularly under the "clear error" standard for relief.

It is true, however, that some courts in this district have treated a magistrate judge's denial of leave to amend a complaint as dispositive, requiring the district court to review the magistrate judge's decision *de novo*. *See, e.g.*, *Covington*, 1999 WL 9835, at *2. Plaintiffs assert that the Court should do the same here. In the alternative, for the reasons that follow, the Court determines that Plaintiffs should be denied leave to amend their complaint under a *de novo* standard.[2]

### 1.    Fraud

Under New York law, the elements of a cause of action for fraud include a material misrepresentation or omission of a material fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). For the scienter element, Plaintiffs' proposed amended

---

[2] The Court does not review the Report's analysis of Plaintiffs' derivative claim of unconscionability *de novo* because Plaintiffs do not object to this portion of the Report.

complaint is subject to the heightened pleading standards of Rule 9(b).  "Rule 9(b) requires a

complaint raising a common-law fraud claim to allege facts that create not just a plausible

inference, but a *strong* inference, of scienter."  *Aviles*, 380 F. Supp. 3d at 281 (internal quotation

marks omitted).

An inference of scienter is strong if it is "cogent and at least as compelling as any

opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 324 (2007).  To adequately plead scienter, a plaintiff must allege facts

showing motive and opportunity, including specific allegations of how defendants benefitted

from the alleged fraud in a concrete way.  *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir.

2000).  Alternatively, a plaintiff can satisfy the pleading standard for scienter through evidence

of conscious misbehavior or recklessness.  For fraud claims based on an alleged material

omission, however, a plaintiff must also plead facts showing a clear duty to disclose to establish

conscious misbehavior or recklessness.  *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001).

Plaintiffs' proposed amendments do not create a strong inference of scienter for their

fraud claim.  S&P purportedly benefitted from its alleged fraudulent withdrawal notice by

avoiding legal liability and reputational harm, benefits that the Second Circuit have

acknowledged as too general to support a strong inference of scienter.  *See Kalnit*, 264 F.3d at

139–42 (2d Cir. 2001) (discussing cases).  Because Plaintiffs do not sufficiently allege motive,

Plaintiffs must instead allege facts supporting an inference of conscious misbehavior or

recklessness.  Their proposed amendments fall short here too.  To the extent that Plaintiffs allege

that the withdrawal notice omitted material information, such as an accurate rating of Lifetrade

or a disclosure of the risks of investing in Lifetrade, they fail to establish that S&P had a duty to

disclose this information.  *See Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114–15 (2d

Cir. 2012) (holding that no special relationship exists between a ratings agency and plaintiffs that lose money after investing in securities that the agency rated favorably absent allegations of direct contract between the agency and plaintiffs).

Nor do Plaintiffs plausibly allege that any of the statements S&P made in the withdrawal notice were misrepresentations and a product of conscious misbehavior or recklessness on S&P's part.  The withdrawal notice stated that S&P was withdrawing its fund credit quality rating of Lifetrade, without offering any specific facts or opinions about Lifetrade.  S&P attributed its withdrawal decision to "continuing legal and regulatory uncertainty regarding the validity of life policies." (Dkt. No. 705-1.)  Plaintiffs assert that S&P did not believe this proffered reason for withdrawing Lifetrade's rating and that S&P's true reason for withdrawal was that it knew Lifetrade never met S&P's rating criteria.  Yet none of Plaintiffs' amended factual allegations makes either of these assertions plausible.  In support of their contention that S&P did not believe that there were uncertainties about the validity of life policies, Plaintiffs allege that S&P failed to provide case support for this view in response to a letter from the Life Insurance Settlement Association.  Plaintiffs further allege that an S&P witness testified that he could not recall reading any cases supporting the existence of legal and regulatory concerns over life policies. (Dkt. No. 544-1 ¶¶ 401–06.)  These factual allegations do not create a strong inference that S&P did not perceive of legal and regulatory risks for life policies.  Indeed, S&P cited concerns about these risks well before it withdrew its rating of Lifetrade. (Dkt. No. 544-1 ¶¶ 399, 402, 407–08.)  And with the exception of conclusory allegations, nothing in the proposed amended complaint supports the claim that S&P withdrew its rating of Lifetrade because it knew it had improperly rated Lifetrade, as opposed to S&P's proffered reason of legal and regulatory concerns.

Despite these deficiencies in their proposed amended complaint, Plaintiffs assert that they still adequately plead scienter because a less stringent pleading standard should apply here.  It is true that "mental states may be pleaded 'generally,'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 171 (2d Cir. 2015), and that Plaintiffs did so by alleging that S&P acted consciously and/or recklessly when issuing its withdrawal notice (Dkt. No. 544-1 ¶ 486).  "Plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent." *Loreley*, 797 F.3d at 171.  Because Plaintiffs fail to allege a strong inference of scienter, for the reasons discussed above, the Court denies Plaintiffs leave to amend their complaint to add a fraud claim.[3]

### 2.     Conspiracy

Under New York law, a plaintiff must allege an underlying actionable tort that was the subject of the conspiracy.  *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 226 (N.D.N.Y. 2009).  The alleged underlying tort for Plaintiffs' conspiracy claim is S&P's publication of its withdrawal notice.  Having concluded that Plaintiffs fail to state a claim that the withdrawal notice was fraudulent, the Court accordingly denies Plaintiffs leave to amend their complaint with a conspiracy claim.[4]

---

[3] The Court declines to review *de novo* Judge Parker's additional conclusions that Plaintiffs' fraud claim was untimely for the "vast majority of Plaintiffs who invested in Lifetrade before April 1, 2011" and that Plaintiffs failed to plead facts supporting a plausible inference of reliance (Dkt. No. 665 at 13–17, 22–25).  The Court overrules these objections as moot.

[4] Judge Parker also determined that Plaintiffs' conspiracy claim was futile because Plaintiffs failed to allege a conspiratorial agreement and the doctrine of *in pari delicto* barred the claim. (Dkt. No. 665 at 25–29.)  Under the *de novo* standard of review, the Court overrules Plaintiffs' objections to these determinations as moot.

### 3.     Aiding and Abetting a Breach of Fiduciary Duty

"To state a claim for aiding and abetting a breach of fiduciary duty under New York law, a plaintiff must allege (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that [the] plaintiff suffered damage as a result of the breach." *Aviles*, 380 F. Supp. 3d at 306 (internal quotation marks omitted).  A plaintiff must also include "an allegation that [the] defendant had actual knowledge of the breach of duty."  *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003) (citing *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 848 (2d Cir. 1987)).  Constructive knowledge is "legally insufficient to impose aiding and abetting liability."  *Id.* (citing *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996)).

The proposed amended complaint establishes, at best, that S&P had constructive knowledge of Lifetrade's breaches of fiduciary duty.  (Dkt. No. 544-1 ¶ 463 (alleging that S&P was "on notice" of Lifetrade's wrongdoing)).  The proposed amended complaint does not contain any facts from which it could be inferred that S&P had *actual* knowledge.  Plaintiffs tacitly acknowledge as much, noting in their objections to the Report that they "allege[d] that S&P was aware or should have been aware" of Lifetrade's misconduct.  The only support that Plaintiffs provide for their conclusory allegations that S&P had actual knowledge is the declaration of John Marcum, who offers — "[u]pon information and belief" — that S&P knew of some of Lifetrade's wrongdoing.  (Dkt. No. 544-2 ¶¶ 72–78.)  But statements based on "information and belief" are insufficient to show a defendant's actual knowledge for an aiding and abetting claim. *Kaufman*, 760 N.Y.S.2d at 157, 169–70 (affirming dismissal of an aiding and abetting claim supported by conclusory allegations of knowledge based on "information and belief").  The

Court thus denies Plaintiffs leave to amend the complaint with their proposed aiding and abetting a breach of fiduciary duty claim.[5]

**B.      S&P's Objections**

S&P objects to the portion of the Report concluding that Plaintiffs satisfied Rules 15 and 16 (*see* Dkt. No. 665 at 12–13).  S&P's objections squarely concern a "pretrial matter not dispositive of a claim or defense," Fed. R. Civ. P. 72(a).  Judge Parker's well-reasoned analysis on these points is neither clearly erroneous or contrary to law.  The Court therefore adopts this part of the Report.

**III.   Conclusion**

Accordingly, the Report and Recommendation is hereby ADOPTED in full, the parties' objections are OVERRULED, and Plaintiffs' motion for leave to amend the complaint is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 542.

SO ORDERED.

Dated: May 9, 2022
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[5] Under *de novo* review of the Report's conclusion as to the aiding and abetting a breach of fiduciary duty claim, the Court does not review Judge Parker's additional conclusion that the *in pari delicto* doctrine bars this claim.  The Court overrules Plaintiffs' objection to this conclusion as moot.