UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

**IN RE LIFETRADE LITIGATION:**

**OPINION ON MOTION TO COMPEL**

**DOCUMENT PRODUCTION**

**17-CV-2987 (JPO)(KHP)**

-------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiffs are individual and institutional investors located principally in Argentina and Japan who purchased shares in three mutual funds that invested in life insurance policies (the "Lifetrade Funds").  Many of the individual investors are elderly.

The funds ultimately went belly-up after they could not satisfy investors' requests to redeems shares as they arose or repay a $500 million line of credit with a Wells Fargo predecessor entity.[1]  In August 2012, in lieu of a formal foreclosure, Lifetrade's management entered into a settlement agreement with Wells Fargo pursuant to which Wells Fargo acquired the entirety of the funds' assets in exchange for a cancellation of the debt.  Plaintiffs lost their entire investments as a result.

On April 24, 2017, Plaintiffs brought the first of five actions, now consolidated in this action for purposes of discovery and resolving common issues of fact and law.  The claims initially asserted included claims under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act and common law claims for fraud, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, breach of contract, unjust enrichment, civil conspiracy, and violations of foreign law, among others.  Some of those claims have since been dismissed,

---

[1] The Wells Fargo Defendants include Wells Fargo Bank, N.A., Wells Fargo Bank Northwest, N.A. (n/k/a Wells Fargo Trust Company, N.A.), Wells Fargo Delaware Trust Company, N.A., and ATC Realty Fifteen, Inc. ("the Wells Fargo Defendants").

and settlement has been reached with some of the original Defendants.  The remaining

Defendants include Wells Fargo and the Roy Smith Estate.

**PRESENT MOTION**

Defendants have moved to compel production of certain documents that Plaintiffs have

withheld or redacted on the basis of attorney-client privilege, common interest privilege and/or

attorney work product protection.  (ECF No. 724.)  There are approximately 185 documents

constituting communications that were shared with or included third parties including various

plaintiff's respective broker/financial advisor, accountant, financial consultant, employee,

spouse, or child who advised on finances, and another Lifetrade investor who decided not to

join the litigation.  Defendants argue that any privilege that attached to these communications

was waived by disclosure to these non-parties.  There are approximately 102 documents dated

prior to November 21, 2016 that relate to contemplated litigation about Plaintiffs' investments

in the Lifetrade Funds.  Defendants argue that Plaintiffs have waived any privilege over these

documents by placing "at issue" their knowledge and discovery of claims asserted in this

litigation.  Finally, there are approximately 45 documents reflecting communications between

and among Plaintiffs or non-lawyers.  Defendants contend that the attorney-client privilege

does not attach to such communications.  At the Court's request, Defendants selected

exemplar documents from Plaintiffs' privilege log that Plaintiffs have submitted to the Court for

in camera review.  (ECF Nos. 791, 796.)

All of the exemplar documents pre-date the commencement of this litigation and

pertain to various Plaintiff's concerns about the loss of their Lifetrade investment and

contemplation of litigation to recover their investment.  Some of the exemplars involve

communications with law firms that were not ultimately retained and others with current counsel. Some include proposed terms of engagement (either within the body of the email communication or as an attachment), information about/qualifications of potential counsel, and exchange of information to share with counsel or questions and thoughts of counsel. Some of the exemplars are communications between and/or among Plaintiffs and their brokers/advisors/employees/child about setting up meetings with attorneys to pursue claims to recover their investment in Lifetrade, some of which also include facts on which a suit might be premised, potential defendants, and information about legal action by others against Lifetrade and related entities outside of the United States, one of which (Exemplar from Category 4A) also attaches wholly irrelevant account transfer requests.

**LEGAL STANDARD**

The party asserting privilege or work product protection bears the burden of showing that it applies and that there has been no waiver of privilege. *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78 N.Y.2d 371, 377 (1991); *Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *6 (S.D.N.Y. Mar. 19, 2019).

### 1. *Attorney-Client Privilege*

In diversity cases and cases where state law provides the rule of decision as to a claim or defense, the Court looks to state law for determining applicable privilege rules. *Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975); Fed. R. Evid. 501. The Court therefore applies New York law in this case. It notes, however, that New York law on attorney-client privilege is nearly indistinguishable from federal law and, where there is no difference, the Court may cite

3

to federal case law.  *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482 n.4 (S.D.N.Y. 2019); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993).

New York applies a privilege to confidential communications between clients and their attorneys made for the purpose of obtaining legal advice.  *Kleeberg v. Eber*, 2019 WL 2085412, at *6 (S.D.N.Y. May 13, 2019).  The privilege is narrowly construed because it renders protected relevant information undiscoverable.  *Id.*

As a general rule, the privilege is waived if the holder of the privilege discloses or consents to disclosure of the privileged communication to a third party.  *Id.* at *7.  However, if the third party is an agent of the attorney or client, then the disclosure may not result in a waiver.  *Id.*  No formal agency agreement is required.  But the party asserting privilege must demonstrate that when it disclosed the privilege communication to the purported agent, it had both a reasonable expectation that the communication would remain confidential and that the disclosure was needed to obtain legal advice.  *Id.*  For example, the presence of a foreign language interpreter would not result in a waiver.  *People v. Osorio*, 75 N.Y.2d 80, 82-84 (1989); see also *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 941 N.Y.S.2d 56, 58 (1st Dep't 2012) (communications prepared by consultants hired by plaintiff's counsel were protected by attorney-client and work product privilege because the communications were prepared in anticipation of litigation and advised plaintiff of the potential claims it could raise against defendant).

A party also can waive privilege by placing privileged communications "at issue" in the litigation by, for example, asserting reliance on counsel as a defense to justify its actions. *Kleeberg*, 2019 WL 2085412, at *8.

4

### 2. *Work Product Doctrine*

Federal law governs the application of work-product protection to documents.  *Id.* at 12;

Fed. R. Civ. P. 26(b)(3).  The doctrine protects documents and materials prepared in anticipation

or because of litigation.  *Am. Oversight v. United States Dep't of Just.*, 2022 WL 3363792, at *9

(2d Cir. Aug. 16, 2022); *Pearlstein*, 2019 WL 1259382, at *5.  Documents prepared by a party or

non-attorney may be protected work product if prepared in anticipation of litigation.  Fed. R.

Civ. P. 26(b)(3); *Am. Oversight*, at *9; *Lapaix v. City of New York*, 2014 WL 11343854, at *2

(S.D.N.Y. Aug. 15, 2014).

Opinion work product, which is given heightened protection, consists of the mental

impressions, conclusions, opinions and legal theories of an attorney or other representative of a

party and is given heightened protection.  *Am. Oversight*, at *8.  Fact work product consists of

factual material, including the results of a factual investigation.  *Id.*  This latter type of work

product is subject to disclosure upon a showing of substantial need and an inability to obtain

the equivalent without undue hardship.  *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981);

*Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *In re Grand Jury Subpoena Dated July 6, 2005*, 510

F.3d 180, 183-84 (2d Cir. 2007);  *United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir. 1998).

Unlike the attorney-client privilege, work product protection is not waived merely

because the material is disclosed to a third party.  *Adlman,* 134 F.3d at 1200 n. 4 (work product

may be shown to others "simply because there [is] some good reason to show it" without

waiving the protection).  Protection is waived only when work product is disclosed to a third

party in a manner that is inconsistent with the purpose of the protection. *See In re Steinhardt

Partners, L.P.*, 9 F.3d 230, 235 (2d Cir.1993); *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL

1233842, at *9 (S.D.N.Y. Mar. 31, 2017) (disclosure that substantially increases the opportunities for potential adversaries to obtain the information results in a waiver of work product protection); *In re Visa Check/MasterMoney Antitrust Litig.,* 190 F.R.D. 309, 314 (E.D.N.Y. 2000) (purpose of work product doctrine is "to keep counsel's work from his opponent in the litigation so that it will not be used against him").  As the Second Circuit has recently explained, the purpose of the work-product protection is "to ensure a vital adversarial process, which, in turn, serves the proper administration of justice."  *Am. Oversight*, at *11.  Disclosing work product to actual or anticipated adversaries in litigation is inconsistent with the purpose of the doctrine and generally will result in a waiver.  *Id*.  Among other things, disclosure to an adversary or potential adversary, whether by disclosing the document itself or making statements about its specific contents, enables that person/entity to disclose to other persons as well, which is inconsistent with the purpose of the protection.  *Id*.

Still, the Second Circuit has cautioned lower courts not to be rigid in their application of the waiver rule, urging a case-by-case assessment based on "common sense" and the "practicalities of litigation."  *Id*. (quoting *In re Steinhardt Partners, L.P.*, 9 F.3d at 235).  It has further clarified that it is not the case that the conduct of interviews or communications with adversaries or witnesses waives protection for "documents subsequently created to memorialize those interviews."  *Id*. at *12.  Even if adversaries or witnesses may have heard what was asked and said during interviews, for example, they may not know how the interviewer memorialized the interview in a document.  *Id*.  The timing of the creation of the document at issue in a dispute over waiver of work product, therefore, is relevant to the issue of waiver.

Finally, it is sometimes the case that work product can be redacted from unprotected material and produced. However, if the work product is not "reasonably segregable," the whole document may be withheld absent waiver or a showing of substantial need. *Id*. at *14.

### 3. *Common Interest Privilege*

Courts in New York have recognized the so-called "common interest" privilege – a doctrine protecting communications made between aligned parties and their attorneys when made to facilitate the provision of legal services or a coordinated legal strategy. *In re Subpoena Duces Tecum Served on New York Marine and General Ins. Co*., 197 WL 599399, at *3 (S.D.N.Y. Sept. 26, 1997).

Importantly, the doctrine does not provide an independent source of protection from disclosure; it applies only to communications that otherwise would be protected by the attorney-client or work product doctrine. *Schanfield v. Sojitz Corp. of Am*., 258 F.R.D. 211, 215 (S.D.N.Y. 2009); see also *Am. Oversight*, at *11 n. 18 (citing *Steinhardt Partners*, 9 F.3d at 236).

### DISCUSSION

Many of the exemplars involve discussions about bringing legal action and/or engaging attorneys. The fact of retainer, negotiations about fee arrangements, and terms of engagement are not protected by the attorney-client privilege. *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A*., 258 F.R.D. 95, 100-101 (S.D.N.Y. 2009) (citing cases). Engagement letter drafts and communications about the terms of engagement are also not work product. *Id*. at 103. But, to the extent the communications about engagement also reflect the motive for seeking counsel, litigation strategy or specific legal advice sought, the attorney-client privilege attaches to those aspects of the communications. *Id*. Similarly, to the

extent the communications about engagement also include factual material prepared because of or in anticipation of litigation or attorney-created content, opinions or strategies, such material and content would constitute work product. As noted above, in instances where the privileged or protected material is so intertwined with the non-privileged or non-protected content that it cannot be easily segregated, the entire document can be withheld. *Am. Oversight*, at *14.

The Court has carefully reviewed the exemplar documents and finds, for the most part, they constitute privileged or protected communications and information that cannot be easily segregated from non-privileged and non-protected content. Additionally, the actual or proposed terms of engagement are not relevant to any claim or defense in this action and therefore are outside the scope of discovery permitted under Rule 26.

This does not, however, end the inquiry as to the information that is work product or privileged within the exemplars and other documents on Plaintiffs' privilege log. There are a variety of persons outside of the attorney-client relationship who participated in the communications or with whom certain work product or privileged information was shared. The Court addresses these issues now.

Some of the exemplars include Lifetrade investors who did not ultimately become Plaintiffs in this action but who nevertheless took part in communications about engaging counsel. The fact that an attorney was not ultimately engaged does not remove the protection from the communication so long as the client/potential client reasonably understood the

communication to be confidential.[2] *United States v. Dennis*, 843 F.2d 652, 656 (2d Cir.1988);

*Newmarkets Partners, LLC*, 258 F.R.D. at 100.  Similarly, sharing work product with such

investors in this circumstance would not be contrary to the purpose of the work product

doctrine.  To the contrary, to the extent those investors were contemplating litigation as well,

work product created by or for them would be protected because it was done in anticipation of

litigation, even if these investors ultimately decided not to become plaintiffs.  The decision not

to file suit or join in a suit does not in and of itself constitute a waiver.  This conclusion is also

bolstered by the common interest doctrine – all of the investors on the exemplar documents

were acting with a common legal purpose insofar as they were all discussing potential claims to

recover their investment in the Lifetrade Funds.  Thus, the presence of a Lifetrade investor who

never ended up as a plaintiff in this action does not constitute a waiver of privilege or work

product protection.

Many of the communications examined by the Court include a broker or financial

advisor.  The exemplars reviewed by the Court revealed that the brokers/financial advisors

were necessary for the communication with the lawyers, as they were assisting the Plaintiffs

with the engagement and acting as the Plaintiffs' agent.  It is also clear that there was some

expectation of confidentiality between the Plaintiff and the broker/financial advisor.  Under

these circumstances, the presence of the broker/financial advisor does not result in a waiver,

whether the communications are viewed as attorney-client communications or work product.

---

[2] Exemplars of communications with other firms/lawyers including Duane Morris, Estudio Marval, O'Farrell & Mairal Abogado, Hogan Lovells, Alexia Rosenthal, Kentaro Nakanish, Akihiro Tozawa, Raphael Algorta, and Diamond Kaplan & Rothstein P.A. all fall into the category of protected communications.

*United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961); *Am. Oversight*, at *12-14; *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005).

In a similar vein, Plaza Asset Management ("Plaza"), an institutional investor and Plaintiff, engaged Conway MacKenzie, Inc., Private Fund Services, to prepare an analysis about the Lifetrade investment.  Although no attorneys participated in the communication dated August 2016, it is obvious from the Court's review that the analysis prepared and conveyed to Plaza was created in anticipation of litigation and is work product.  The Court also notes that it includes advice of counsel within the analysis.  There is every indicia that this communication was intended to be maintained as confidential.  Thus, this document is protected from disclosure as work product.

Another communication where no lawyers were present was between and among Plaza and KDB Asset Management Co., Ltd. in April 2013.  This communication contains discussion of certain facts about the Lifetrade Funds, advice from a lawyer about next steps, and potential litigation by Plaza and others regarding the Lifetrade Funds.  This communication thus qualifies as protected work product of both investors.  Because the communication was between two investors in Lifetrade with a common legal interest discussing that interest, the common interest doctrine applies to the sharing of privileged advice within the communication as well.

One of the exemplars (Category 5) is a series of emails with a re: line "Letters" and simply forwarding two attachments.  The attachments themselves are not included in the document provided to the Court but were separately produced.  The bottom portion of the email string includes a communication to plaintiff's lawyer, and in the top email the plaintiff forwards the chain and attachments to his accountant.  No information relevant to the case is

included in the emails themselves – indeed, there is no substance other than forwarding the attachments that were already produced in discovery.  Though the cover emails are not themselves privileged because they do not seek or convey legal advice and clearly are not work product, they need not be produced on relevance grounds.

Another contested document (Category 7) is an email communication that starts with a non-privileged communication between Florencio Menceyra, a former Lifetrade employee, and members of the "Mesa Chica" that is then forwarded among a group of plaintiffs and that discusses legal strategy and discussions with a lawyer.  The bottom email is not privileged and has been separately produced in discovery.  The remainder of the email is protected work product and privileged.

Several exemplars include communications where an employee or assistant was involved.  An employee is typically viewed as an agent when involved to provide information needed for the retention of counsel and/or to provide information relevant for assessing the claims.  This principle has been applied to former employees and de facto employees as well. *See Upjohn Co.*, 449 U.S. at 396; *Exp.-Imp. Bank of the U.S.*, 232 F.R.D. at 112; *Ross v. UKI Ltd.*, 2004 WL 67221, at *3 (S.D.N.Y. Jan. 15, 2004).  No waiver resulted by involving an employee in the circumstances of this case based on the exemplars provided.  The Court's assessment of the exemplars is that the employees were a necessary part of the communications.

Two of the exemplars were communications in which a child of an individual investor was included and where it appears the child was assisting the parent to engage the attorney.  In one case, the child was also an attorney.  Every indicia from the communications indicate an expectation of confidentiality and also that the communication would not have been had but in

11

anticipation of litigation.  New York courts have found in these circumstances, the presence of

the child does not result in a waiver.  *Schanfield*, 258 F.R.D. at 216-17 (email between plaintiff

and family member who was attorney were protected by work product doctrine because they

concerned legal strategy and sought advice negotiating engagement of counsel).

Although no exemplars included communications in which a spouse was included, the

Court notes that the privilege log does contain examples of this.  For similar reasons that

communications in which a child participated, the presence of a spouse would not in this case

result in a waiver both because of the expectation of confidentiality and because most courts in

New York find a spouse to be an agent.  *Matter of Will of Pretino*, 567 N.Y.S.2d 1009, 1011 (Sur.

1991) (Where the disclosure of information protected by the attorney-client privilege is

disclosed in a communication which is itself privileged, there is no waiver. Thus, the disclosure

to a spouse with the intention of preserving confidentiality does not amount to a waiver of the

attorney-client privilege) (citing *Solomon v. Scientific American, Inc.*, 125 F.R.D. 34, 38 (S.D.N.Y.

1998)); *In re Horowitz*, 841 N.Y.S.2d 826 (Sur. 2007) (upholding attorney-client privilege as to

communications between Sosnow and her counsel in the presence of her husband Nagler

because Nagler "was able to provide information and advice" to Sosnow and "it would be

unreasonable to discern any expectation on the part of [ ] Sosnow or her attorneys other than

that their conversations in the presence of [ ] Nagler would remain strictly confidential")*; Charal*

*v. Pierce*, 1981 U.S. Dist. LEXIS 17497, at *28-29 (E.D.N.Y. Nov. 3, 1981) ("Mr. Charal's presence

did not destroy the privileged nature of Mrs. Charal's communication with her attorney"

because "Mrs. Charal understood the January 5, 1981 conference among herself, her husband,

and her attorney to be confidential" and "relied on her husband of 45 years for advice, as no doubt he did on her in other matters").

Defendants argue some or all of the communications should be produced because Plaintiffs have put the communication "at issue" or because fairness requires disclosure of the communication. This argument is unconvincing. Plaintiffs are not relying on the advice of counsel in this matter and have not placed their attorney-client communications and work product at issue. *See In re County of Erie*, 473 F.3d 413, 423 (2d Cir. 2007). Defendants argue that Plaintiffs have placed the date when they became aware they had a claim at issue by pleading that their claims are timely and only first discovered in 2016. Because the privilege log indicates that at least some Plaintiffs were exploring litigation against Lifetrade and related entities before 2016, Defendants understandably want to see the precise communications. However, the mere relevance of the privileged communications does not trigger an at-issue waiver. *See Deutsche Bank Tr. Co. of Americas v. Tri-Links Inv. Tr.*, 837 N.Y.S.2d 15, 23 (1st Dep't 2007) (if the mere relevance of privileged communications to the parties' dispute could trigger at-issue waiver, the "[attorney-client] privilege would have little effect") (citing *Long Is. Lighting Co. v. Allianz Underwriters Ins. Co.*, 749 N.Y.S.2d 488 (1st Dep't 2002)). Nor does the statute of limitations defense, which Plaintiffs anticipated in their pleading, justify a finding of at-issue waiver, which is based on concepts of fairness in litigation. A party cannot use privilege as a sword and a shield. However, that is not what Plaintiffs are doing. Plaintiffs have not blocked discovery of when Plaintiff's learned of the Fund's settlement with Wells Fargo, S&P's withdrawal of ratings, information about the Lifetrade Funds' debt and other indicia that might have alerted them to a claim prior to 2016. Defendants may fully explore through non-

privileged documents, interrogatories, depositions, and other discovery tools when they learned of certain facts that may have put them on notice of a claim and may even confirm with Plaintiffs that they explored the possibility of litigation prior to 2016 without going into the substance of their communications with lawyers and work product.  None of the specific communications in the exemplars are vital to Defendants' statute of limitations defense or even necessary for Defendants to fully explore non-privileged fact information needed for their defense.  For the same reasons, Defendants have not shown a substantial need for the information that constitutes work product within the documents.  None of the cases cited by Defendants warrant a different outcome as they all involved situations when the substance of the communication itself was placed at issue.  *See In re Grand Jury Proc.*, 219 F.3d 175, 187 (2d Cir. 2000) (discussing whether waiver occurred after a corporate employee referred to advice of counsel as basis for company's actions when testifying before a grand jury); *Robinson v. De Niro*, 2022 WL 704922, at *10 (S.D.N.Y. Mar. 9, 2022) (only discussing waiver in the context of factual information uncovered during investigation that was relevant and being relied upon in prosecution of counterclaim); *Newmarkets Partners, LLC* , 258 F.R.D. at 107-08 (finding Plaintiff placed documents at issue and could not claim privilege over documents where "[t]hese communications are the same documents described in the Amended Complaint that concern the "nature of a proposed action").

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel is denied.

**SO ORDERED.**

Dated: August 24, 2022
New York, New York

KATHARINE H. PARKER
United States Magistrate Judge