**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE;  LIFETRADE LITIGATION

This document relates to:

**ALL ACTIONS**

Civil Action No.

1:17-cv-02987-JPO-KHP

---

**MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY DEFENDANT**
**JOHN MARCUM'S MOTION TO DISMISS**
**THIRD PARTY COMPLAINT OF DEFENDANTS/THIRD**
**PARTY  PLAINTIFFS WELLS FARGO, ET AL**

---

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ  08648

*Counsel for Third Party Defendant,*
*John Marcum*

i

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

    A.    The Parties ....................................................................................1

    B.    The Third Party Complaint ...........................................................1

PROCEDURAL HISTORY..............................................................................................4

    A.    The History of the Litigation ........................................................4

    B.    The Claims Against Mr. Marcum Were Dismissed in the June 2021 Settlement ...5

STATEMENT OF FACTS ...............................................................................................7

    A.    The 2012 Settlement Agreement and Mr. Marcum's Release .................................7

    B.    The Dismissal of Mr. Marcum from this Litigation and the Prejudice Caused by the Untimely Filing of the Third Party Complaint................................7

LEGAL ARGUMENT......................................................................................................10

    POINT I .............................................................................................10

    THE STANDARD ON A MOTION TO DISMISS A THIRD PARTY COMPLAINT

    POINT II .............................................................................................12

    WELLS FARGO'S CONTRIBUTION CLAIM AGAINST JOHN MARCUM SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE RELEASE IN THE 2012 SETTLEMENT AGREEMENT

    POINT III.............................................................................................16

    WELLS FARGO DEFENDANTS' INEXCUSABLE DELAY IN FILING THE THIRD PARTY COMPLAINT HAS SEVERELY PREJUDICED JOHN MARCUM AND WARRANTS DISMISSAL PURSUANT TO THE DOCTRINE OF LACHES

A.      Wells Fargo's Delay in Filing is Inexcusable ........................................................16

B.      John Marcum Has Been Prejudiced by the Delay ................................................17

POINT IV.............................................................................................................................20

THE THIRD PARTY COMPLAINT SHOULD BE DISMISSED
BECAUSE THE WELLS FARGO DEFENDANTS WAIVED THEIR
CLAIMS AGAINST JOHN MARCUM WHEN THEY DID NOT
OBJECT TO HIS DISMISSAL FROM THE CASE AFTER HAVING
FAILED TO FILE ANY CLAIMS AGAINST HIM

CONCLUSION.....................................................................................................................22

## **TABLE OF AUTHORITIES**

### **Cases**

*Advanced Cardiovascular Sys. v. SciMed Life Sys., Inc.*, 988 F.2d 1157 (Fed. Cir. 1993).............1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................1

*Birchfield v. Rushmore Loan Mgmt. Servs.,* No. 2:17-CV-142, 2019 U .S. Dist.
LEXIS 232942 (N.D.W. Va. Jan. 29, 2019)...........................................................13

*Booth v. 3669 Delaware, Inc.*, 92 N.Y.2d 934 (1998) ....................................................14

*Cantor Fitzgerald v. Lutnick*, 313 F.3d 704 (2d Cir. 2002)...........................................10

*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996) ............................16, 17

*Conopco, Inc. v. Roll Int'l*, 231 F.3d 82 (2d Cir. 2000).................................................11

*Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991) .....................11

*Day v. Moscow*, 955 F.2d 807 (2d Cir. 1992).................................................................11

*General Motors Acceptance Corp. v. Clifton-Fine Central Sch. Dist.,* 85 N.Y. 2d 232 (1995)....20

*Global Mins. & Metals Corp., v. Holme*, 35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dept 2006)........14

*Goodman v. McDonnel Douglas Corp.*, 606 F.2d 800 (8th Cir. 1979) ...........................17

*Haskins v. People of New York*, 1:17-cv-00540, 2019 U.S. Dist. LEXIS 46446
(S.D.N.Y. Mar. 20, 2019) .......................................................................................14

*Honeywell Int'l Inc. v. R.R. Donnelly & Sons, Co.*, 16CV9695, 2020 U.S. Dist. LEXIS
119092 (W.D.N.Y. July 7, 2020)..............................................................................10

*IBJ Schroder Bank & Trust Co. v. Fairfield Communities, Inc.*, 178 F.3d 78
(2d Cir. 1999)..........................................................................................................20

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ......................................10

*Mesivta &. Yeshiva Gedolah of Manhattan Beach v. VNB N.Y., LLC*, 197 A.D.3d 703
(App. Div. 2d Dep't 2021)........................................................................................14

*Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 NY2d 175 (Ct. App. 1982) ............20

*Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322
(S.D.N.Y. 2011) .................................................................................................................10

*Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949 (4th Cir., 1971),
cert. denied, 446 U.S. 913 (1980) .............................................................................17

*Veroblue Farms USA Inc. v. Canaccord Genuity LLC*, 20 Civ. 4394, 2021 U.S. Dist. LEXIS
14166294 (S.D.N.Y. Sept. 1, 2021) .............................................................................14

*Watson v. Mayo*, 07 Civ. 54, 2008 U.S. Dist. LEXIS 18444 (S.D.N.Y. Feb. 26, 2008) ...............16

## Rules

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1, 10, 11

## Other Authorities

*Black's Law Dictionary* (9th ed. 2009).............................................................................................13

Third Party Defendant John Marcum ("Mr. Marcum") submits this Memorandum of Law in support of his motion to dismiss the Third Party Complaint filed by Defendants/Third Party Plaintiffs Wells Fargo Bank, N.A., Wells Fargo Bank Northwest, N.A., Wells Fargo Delaware Trust Company, N.A. and ATC Realty Fifteen, Inc. (hereafter the "Wells Fargo Defendants") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

### A.   The Parties

Plaintiffs are a group of individuals and class representatives of offshore investors in The Lifetrade Fund BV and several related entities.  (Third Amended and Consolidated Class Action Complaint, hereafter referred to as "TAC," ¶ 18).  At relevant times, the Lifetrade Fund BV and its related entities (*Id.* at ¶¶ 23 to 28) (the "Lifetrade Defendants") were engaged in the business of purchasing life insurance policies referred to as "life settlements."  (*Id.*, ¶¶ 38, 41 to 43). Beginning in June 2008, the Wells Fargo Defendants provided financing for the Lifetrade portfolio.  (*Id.*, ¶ 114).  Third Party Defendant, John Marcum, is alleged to be "one of the controlling directors of many of the Lifetrade Defendants" . . . and the "chief marketing officer for the Lifetrade Entities . . . in charge of investor communications."  (Third Party Complaint, hereafter referred to as "TPC," ¶ 8).

### B.   The Third Party Complaint

The Wells Fargo Defendants have filed a Third Party Complaint against Mr. Marcum seeking contribution. For several reasons this belated attempt to assert a contribution claim fails to state a claim upon which relief can be granted, and should be dismissed. As a threshold matter, the claim is precluded by the terms of a release executed by the Wells Fargo Defendants

in favor of Mr. Marcum in August 2012 in which the Wells Fargo Defendants released Mr. Marcum from individual liability (Opinion and Order and Report on Motion to Amend dated November 21, 2022, hereafter referred to as "Report," p. 3). (*See also* Declaration of John Marcum, Exhibit A, p. 1 and ¶ 13.17).

In addition, a Rule 12(b)(6) dismissal is warranted on equitable grounds for two reasons. First, the Wells Fargo Defendants' inexcusably delayed filing the Third Party Complaint. It waited until December 2022, nearly six years after this lawsuit began to file a contribution claim against its co-defendant, Mr. Marcum. And after Mr. Marcum, in May 2021, settled and was dismissed from this matter, Wells Fargo waited nearly 18 months, while it took discovery from others, before it filed a motion to join him in this litigation.

Second, relying on the fact that he had not been joined as a contribution Defendant, Mr. Marcum changed his position from one of defending against Plaintiffs' claims to one of assisting Plaintiffs. (Declaration of John Marcum, ¶¶ 4 to 6). As a consequence of Wells Fargo's conduct, Mr. Marcum has been gravely prejudiced. As discussed below, the Stipulation and Agreement that culminated in his release imposed onerous obligations upon Mr. Marcum to provide information to Plaintiffs which assistance would not have been forthcoming if Mr. Marcum had been joined as a contribution defendant. By helping Plaintiffs, Mr. Marcum enhanced his own liability exposure. Were he to cease providing that help because he has now been joined as a defendant, Mr. Marcum would, under the terms of the Stipulation and Agreement with Plaintiffs, be potentially liable to them for $150,000 in liquidated damages. (Declaration of John Marcum, ¶ 5 and Exhibit B, p. 5). If he continues to cooperate, Mr. Marcum runs the risk of facilitating Plaintiffs' efforts to obtain a judgment for which he could, in part, be liable. Had the Wells Fargo Defendants cross claimed against Mr. Marcum in 2017,

when this litigation began, or in 2020, when they filed their answer, or any time shortly

thereafter, these insoluble conflicts would have been avoided

In addition, Defendants' inexcusable delay has had significant adverse litigation

consequences for Mr. Marcum.  Since his dismissal, nearly two years ago, Mr. Marcum has not

participated in discovery in this case, which included some eight depositions.  It is simply unfair

for Wells Fargo to have lain in wait for six years and finally file a cross claim against Mr.

Marcum on the eve of the close of discovery.  Here, the prejudice that Mr. Marcum would suffer

as a result is incurable.  In such circumstances, dismissal under Rule 12(b)(6) is justified.

## PROCEDURAL HISTORY

### A.       The History of the Litigation

This litigation commenced on April 24, 2017 – nearly six years ago – when Plaintiffs filed a Complaint against the Wells Fargo Defendants and others asserting shareholder derivative claims arising out of an August 14, 2012  Settlement Agreement ("2012 Settlement Agreement") between the Lifetrade entities and Wells Fargo Bank, N.A.   In accordance with that Agreement, the Wells Fargo Defendants acquired all of the assets of the Lifetrade Entities,[1] which Plaintiffs alleged were worth significantly more than the debt that the agreement extinguished.  (TPC, ¶ 3). Plaintiffs' Complaint alleges, among other wrongs, that the conduct of the Wells Fargo Defendants was unconscionable and that they aided and abetted a breach of fiduciary duty by other Defendants.  (TPC, ¶¶ 3 to 4; *see also* TAC, ¶¶ 120 to 124).

Mr. Marcum was named as a Defendant in Plaintiffs' First Amended Complaint filed on August 7, 2017 as a consequence of his role as a consultant to many of the Lifetrade Entities at the time of the sale of the Lifetrade insurance portfolio to the Wells Fargo Defendants.  (Report, p. 2).

Thereafter, the parties engaged in extensive motion practice and the amendment of pleadings that spanned the course of nearly three years.  The Wells Fargo Defendants finally filed their Answer to the Third Amended Complaint on May 15, 2020, more than two years ago. Despite asserting the affirmative defenses of contribution and set-off in their Answer, the Wells Fargo Defendants did not assert a cross-claim against Mr. Marcum or any other individual defendant.  (Report, pp. 3 to 4).

---

[1] "Lifetrade Entities" refers to Lifetrade Fund B.V., L Trade Plus Ltd., and L Trade Fixed Capital (BVI) Ltd., on whose behalf the Plaintiffs filed this shareholder derivative claim.  (TPC ¶ 3).

In 2020, recognizing that the litigation was being unduly delayed and drawn out, the

Court began to deny further requests for extensions and amendments to pleadings.  At a June 22,

2020 Case Management Conference – nearly three years ago – the Court instructed the parties to

finalize their claims and allegations:

> No more amendments…we need to get this set so that everybody
> knows what they're dealing with, what is the scope of the
> allegations…and then have discovery on those in an efficient way.
> …We need to get clarity on what are the claims that remain …I'm
> not going to permit expansion of the allegations because the case
> needs to move forward…"
>
> [ECF No. 297 (Transcript of June 22, 2020 Case Management
> Conference) at 31:13-32:3].

Again, in May 2021, the Court emphasized that the time for adding or amending claims was

over, noting that the case was "already four years old" and recognizing that "further delay is

prejudicial to the other parties in the case."  (*See* ECF No. 423 (Order of May 11, 2021)).

Nonetheless, more than two years after they answered, the Wells Fargo Defendants, on or

about December 5, 2022, filed the instant Third Party Complaint against John Marcum.  (ECF

No. 937).

### B.    The Claims Against Mr. Marcum Were Dismissed in the June 2021 Settlement

Eighteen months earlier, on May 20, 2021, the Plaintiffs and Mr. Marcum entered into a

Stipulation and Agreement resolving the claims between them.  (Declaration of John Marcum,

Exhibit B).  On or about June 29, 2021, Plaintiffs filed a Stipulation of Dismissal with the Court,

dismissing all claims as to Mr. Marcum with prejudice. (Report, p. 4).  All parties, including the

Wells Fargo Defendants, received a redacted form of the settlement agreement on August 17,

5

2021.  (ECF No. 482).  At no point did the Wells Fargo Defendants object to the dismissal of Mr. Marcum from the litigation.  (Report, p. 4).

Nevertheless, on July 27, 2022 - over one year after Mr. Marcum's dismissal from the case - the Wells Fargo Defendants filed a motion seeking leave to amend their Answer and to file a Third Party Complaint against him. (ECF No. 803).  The Court granted the Wells Fargo Defendants' request, and the Third Party Complaint was filed on December 5, 2022.  The Third Party Complaint provides scant details or facts to support Wells Fargo's alleged right to contribution, but instead asserts a conclusory allegation that "if any Wells Fargo Defendant is held liable to Plaintiffs, such liability would arise out of the active, affirmative, negligent and careless acts or conduct, and/or omissions, and/or violations, of Mr. Marcum."  (TPC, ¶ 15).

## STATEMENT OF FACTS

### A.   The 2012 Settlement Agreement and Mr. Marcum's Release

The Lifetrade Plaintiffs' claims arise from the 2012 Settlement Agreement referenced in the Third Party Complaint which was executed by the Lifetrade Entities and the Wells Fargo Defendants.  (TAC ¶¶ 135 to 146).  In this litigation Plaintiffs have asserted, among other claims, that the 2012 settlement constituted a fraudulent conveyance of the Lifetrade insurance portfolio to the Wells Fargo Defendants.  (TAC, ¶¶ 177 to 233).  Two claims remain:  Count III (unconscionability) and Count XIII (aiding and abetting a breach of fiduciary duty).  (*See* Report, pp. 3 to 4).

With respect to Mr. Marcum and relevant to the within motion, the 2012 Settlement Agreement (Declaration of John Marcum, Exhibit A) contained a broad Release in favor of officers, directors, employees or agents of Lifetrade Ireland as well as any past, present or future stockholder or any other owner of any equity interest in Lifetrade Ireland.  Pursuant to the 2012 Release, as Judge Parker found, "Wells Fargo . . . released the funds and . . . Marcum from individual liability."  Report, p. 3.

### B.   The Dismissal of Mr. Marcum from this Litigation and the Prejudice Caused by the Untimely Filing of the Third Party Complaint

Plaintiffs, who were not parties to the 2012 Settlement Agreement, filed the Complaint in this action in 2017 asserting claims against John Marcum, the Wells Fargo Defendants and others.  Three years later, the Wells Fargo Defendants filed their Answer but did not cross-claim against Mr. Marcum.

On May 20, 2021, Plaintiffs and Mr. Marcum entered into a "Stipulation and Settlement Agreement" with the Plaintiffs.  (Declaration of John Marcum, Exhibit B).  That Agreement was subject to the approval of this Court, and contemplated his dismissal with prejudice.  (*Id.* at p. 1).

The Agreement imposed onerous obligations upon Mr. Marcum, requiring that he

[f]ully cooperate with Plaintiffs in providing them with assistance including but not limited to identifying the nature and location of relevant documents and evidence [and], providing the identities and whereabouts of knowledgeable witnesses . . . respecting all aspects of the claims pending against the Defendants. ( *Id.* at p. 2.)

It listed one dozen categories of information which Mr. Marcum was to provide, required

that he deliver his laptop computer to Plaintiffs' counsel, meet with Plaintiffs' counsel,

and execute an affidavit setting forth the information described in each of the twelve

categories. Were Mr. Marcum to fail to cooperate, he would be liable for liquidated

damages in the amount of $150,000. (*Id.* at pp. 4 to 5). As discussed below, these

contractual undertakings are incompatible with Mr. Marcum's interests were he to be a

party in this matter because, in order to minimize his contribution liability, it would have

been in his interest to contest Plaintiffs' assertions, rather than to assist Plaintiffs.

Following the execution of this agreement, Plaintiffs, in June 2021, on notice to the Wells

Fargo Defendants, dismissed Mr. Marcum. No party objected to the dismissal.

After Mr. Marcum's dismissal from the case nearly two years ago, the parties engaged in

extensive fact discovery. As required by the 2021 Settlement Agreement with Plaintiffs, Mr.

Marcum produced his laptop computer containing Lifetrade information to Plaintiffs. In light of

his dismissal from the case and release from liability, he concluded that he had no liability

exposure and he freely handed over his computer, without reviewing its contents, or even

performing a check for potentially "privileged" information. (Declaration of John Marcum, ¶ 6).

Ultimately, this information was produced to all parties, including the Wells Fargo Defendants.

Additionally, the parties proceeded to conduct depositions without Mr. Marcum's

involvement. Since Mr. Marcum's dismissal, at least eight depositions are known to have

occurred.  (Declaration of Arnold Lakind, ¶ 2).  Mr. Marcum was not represented in any of these depositions, nor was he provided notice of their scheduling.  (Declaration of John Marcum, ¶ 7).  As a result, Mr. Marcum did not have the opportunity to attempt to address Plaintiffs' claims or to exonerate himself.

## LEGAL ARGUMENT

### POINT I

### THE STANDARD ON A MOTION TO DISMISS A THIRD PARTY COMPLAINT

When reviewing motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court should determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

A complaint must plead more than "[t]hreadbare recitals of the elements" or "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court "accepts the factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff", it need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal quotation marks and citation omitted). *See also Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (the court need not give "credence to plaintiff's conclusory allegations" or legal conclusions offered as pleadings).

The pleading standard set forth in *Twombly* applies to Third Party Complaints asserting contribution claims. *See Honeywell Int'l Inc. v. R.R. Donnelly & Sons, Co.*, 16CV9695, 2020 U.S. Dist. LEXIS 119092, *19 (W.D.N.Y. 2020) (dismissing third party complaint asserting CERCLA contribution claim where third party plaintiff's allegations were merely "unadorned defendant-done-me-wrong" accusations); *Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*,

769 F. Supp. 2d 322 (S.D.N.Y. 2011) (dismissing third party complaint asserting contribution claim for failure to sufficiently plead breach of duty necessary to maintain a contribution claim under New York law).

When considering a motion to dismiss under Rule 12(b)(6), a court may look beyond the four corners of the complaint and consider documents that are attached to the complaint, referred to in the complaint or are otherwise integral to the subject matter of the complaint. *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Courts can also consider matters of which they can take judicial notice, including public filings and procedural history, when addressing equitable defenses such as those raised in the within motion. *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

Measured by those standards, the Third Party Complaint filed against John Marcum by the Wells Fargo Defendants should be dismissed.

## POINT II

## WELLS FARGO'S CONTRIBUTION CLAIM AGAINST JOHN MARCUM SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE RELEASE IN THE 2012 SETTLEMENT AGREEMENT

Wells Fargo's Third Party Complaint fails to state a claim upon which the relief can be granted because its contribution claim is barred by the express and unambiguous terms of the August 14, 2012 Settlement Agreement that is at the heart of this litigation. That Agreement provides for a release of Mr. Marcum from all personal liability arising out of the conduct that is the subject of Plaintiffs' Complaint. (Report, p. 3). The Agreement provides, in part, as follows:

> 13.17 Limited Recourse
>
> (a) Subject to Section 13.17(d) hereof, each party (other than Lifetrade Ireland) acknowledges that no recourse may be taken, directly or indirectly, with respect to any Secured Indebtedness or Claims, against (i) any officers, directors, employees or agents of Lifetrade Ireland, (ii) any incorporator of Lifetrade Ireland, or (iii) any past, present, or future stockholder, or other owner of any equity interest in Lifetrade Ireland (it being understood and agreed that notes or instruments issued to Lifetrade Fund do not constitute equity interests), excluding Lifetrade Fund, LAM Curacao, the Borrower or any affiliate or subsidiary thereof . . .
>
> [2012 Settlement Agreement, Section 13.17(a)(emphasis added) Declaration of John Marcum, Exhibit A]

Lifetrade Ireland is synonymous with Lifetrade Life Settlements Limited. (Declaration of John Marcum, Exhibit A; Settlement agreement, p. 1). According to Paragraph 27 of the Third Amended Complaint, Lifetrade Life Settlements Limited is "an alter ego of the Lifetrade Fund." According to Paragraph 33 of the Third Amended Complaint, LMC NV and LMC LLC were the investment manager consultants to the Lifetrade Fund. And, as set forth in paragraph 34 of the Third Party Complaint, Mr. Marcum is alleged to be owner of LMC NV and LMC LLC, and the

12

chief marketing officer for the Lifetrade Entities. (TPC, ¶ 34). As Judge Parker found: "Under the terms of the Settlement Agreement, Wells Fargo . . . released . . . Marcum from individual liability." (Report, p. 3). Since Mr. Marcum is a stockholder of the owner of an equity interest in Lifetrade Ireland (LMC MV and LMC LLC) no recourse may be had against him.

First, the term "recourse," used in the relevant paragraph of the 2012 Agreement, is defined as "the lack of means by which to obtain reimbursement from, or a judgment against, a person or entity." *Black's Law Dictionary* (9th ed. 2009). Other authorities have defined "recourse" as "the legal right to demand compensation or payment" or as "[e]nforcement of, or method of enforcing, a right." *Birchfield v. Rushmore Loan Mgmt. Servs.*, No. 2:17-CV-142, 2019 U.S. Dist. LEXIS 232942, at *23 (N.D.W. Va. Jan. 29, 2019). The Wells Fargo Defendants, by filing their Third Party Complaint seek "recourse" against Mr. Marcum for a "Claim."

Second, § 13.17 is comprehensive and encompasses any "claims," whether known of unknown of each Lifetrade Party, concerning the 2012 Settlement Agreement:

> "Claims" shall mean any and all charges, complaints, claims, counterclaims, liabilities, defenses, obligations, promises…damages, penalties, actions, causes of action…suits promises, rights, demands, threats, costs, losses, rights, judgments, orders, compensation, debts, interest, fees and expenses…including whether in law, equity or otherwise, whether now known or unknown, whether in contract or in tort,…and whether or not concealed, sealed or hidden, of each Lifetrade Party, relating in any way to any Lifetrade Party, the Lender Documents, the Foreclosure, the Foreclosed Assets or other Collateral, or which may be asserted by any Lifetrade Party through a Lifetrade Party or otherwise on a Lifetrade Party's behalf (including those which may be asserted on any derivative basis), which have existed at any time on or prior to the Effective Date.

[Declaration of John Marcum, Exhibit A, 2012 Settlement Agreement, pp. 3-4].

The Third Party Complaint seeks to enforce a "claim" as defined in § 13.17.

All of the claims upon which the Wells Fargo Defendants seek contribution accrued prior to the Settlement Agreement and were subsumed with the release incorporated into § 13.17. Therefore, Mr. Marcum is the beneficiary of the release and, as set forth below, the release bars the claims set forth in the Third Party Complaint.

Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Global Mins. & Metals Corp., v. Holme*, 35 AD3d 93, 98, 824 N.Y.S.2d 210 [1st Dept 2006]. When a release is clear and unambiguous, New York courts have held that it should be enforced, "consistent with the public policy favoring settlements." *Booth v. 3669 Delaware, Inc.*, 92 N.Y.2d 934, 935 (1998) (dismissing a claim and holding that the release signed by the parties should be enforced according to its terms).

As a result, the Third Party Complaint should be dismissed. *Mesivta & Yeshiva Gedolah of Manhattan Beach v. VNB N.Y., LLC*, 197 A.D.3d 703, 704 (App. Div. 2d Dep't 2021) (upholding dismissal of complaint in light of a release contained in parties' agreement because "[p]ublic policy favors the enforcement of settlements"); *Haskins v. People of New York*, 1:17-cv-00540, 2019 U.S. Dist. LEXIS 46446 (S.D.N.Y. 2019) (dismissing plaintiff's claims because plaintiff had executed a release of such claims against defendants); *Veroblue Farms USA Inc. v. Canaccord Genuity LLC*, 20 Civ. 4394, 2021 U.S. Dist. LEXIS 166294 (S.D.N.Y. 2021) (dismissing complaint because plaintiff's claims were barred by a mutual release executed by the parties).

The sole basis of the Third Party Complaint is a bare bones and conclusory contribution claim against Mr. Marcum arising from the Wells Fargo Defendants' potential liability in connection with the August 2012 Settlement Agreement. The claim falls within the scope of the release set forth in paragraph 13.17, and there is no basis upon which to deprive Mr. Marcum of

14

the benefit of the release extended to him by the Wells Fargo Defendants.  Accordingly, the

Third Party Complaint should be dismissed.

**POINT III**

**WELLS FARGO DEFENDANTS' INEXCUSABLE DELAY
IN FILING THE THIRD PARTY COMPLAINT HAS
SEVERELY PREJUDICED JOHN MARCUM AND
WARRANTS DISMISSAL PURSUANT TO THE DOCTRINE
OF LACHES**

Wells Fargo's tardy claim against Mr. Marcum comes too late in the litigation and is

barred by the doctrine of laches.  In order to prevail on a motion to dismiss on grounds of laches,

"a defendant must prove that it has been prejudiced by the plaintiff's unreasonable delay in

bringing the action." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996).

Prejudice occurs when a defendant has "changed his position in a way that would not have

occurred if the plaintiff had not delayed." *Id.*  (Internal citations omitted).  The Wells Fargo

Defendants' filing of its Third Party Complaint – nearly six years after this litigation commenced

and over a year and a half since Mr. Marcum's dismissal from the case – constitutes, as this

Court already determined, an inexcusable delay and that delay has severely prejudiced Mr.

Marcum warranting dismissal on grounds of laches.

    A.    **Wells Fargo's Delay in Filing is Inexcusable**

Clearly, the Wells Fargo Defendants knew of Mr. Marcum's "alleged misconduct" in

2017, when Plaintiffs filed their Complaint.  Yet notwithstanding the extensive briefing on the

joinder motion, Wells Fargo has not offered a single credible explanation for its inaction.  *See*

*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996) (dismissing plaintiff's

claim after a 5-year delay in filing an action); *Watson v. Mayo*, 2008 U.S. Dist. LEXIS 18444,

*12 (S.D.N.Y. Feb. 26, 2008) (dismissing claim filed 1 ½ years after initial complaint).  As this

Court noted, "Wells Fargo has little excuse for only now moving to assert a claim against

Marcum." Report, p. 6.

16

**B.    John Marcum Has Been Prejudiced by the Delay**

As noted above, prejudice occurs when a "defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Conopco, Inc.*, 95 F.3d at 192, (quoting *Goodman v. McDonnel Douglas Corp.*, 606 F.2d 800, 808 n.17 (8th Cir. 1979) (quoting *Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958-59 (4th Cir. 1971), cert. denied, 446 U.S. 913 (1980)).  Similar to the case at hand, the *Conopco* Court recognized that plaintiff's delay impacted defendant's actions, and concluded that, had plaintiff filed suit earlier, the defendant could have or would have acted differently.

Here, Mr. Marcum has been prejudiced in at least five very significant ways.  First, pursuant to the Settlement Agreement with Plaintiffs, Mr. Marcum is contractually obligated to assist them and, if he fails to do so, he is vulnerable to a $150,000 liquidated damage award.  Mr. Marcum cannot successfully navigate the competing demands upon him:  on the one hand to cooperate with Plaintiffs as he promised to do and, on the other, to seek to oppose their claim against all Defendants in order to protect himself.  Had a contribution claim been filed at any time since 2017, Mr. Marcum would not have agreed to cooperate with Plaintiffs.  (Declaration of John Marcum, ¶ 5).  This prejudice cannot be undone.

Second, New York GOL 15-108(b) affords contribution protection to a settling tortfeasor.  However to avail oneself of that protection, the settling tortfeasor must pay compensation greater than "one dollar."  NY GOL 15-108(d)(1).  Had the Wells Fargo Defendants timely filed their contribution claim, Mr. Marcum would have paid this amount to Plaintiffs to secure contribution protection.

Third, because there was no cross-claim for contribution, Mr. Marcum provided extensive cooperation to Plaintiffs, sharing information with them. (Declaration of John Marcum, ¶ 6). To the extent that that assistance enhances Plaintiffs' prospects for success or increases their damage award, Mr. Marcum is vulnerable to paying more on any contribution award on behalf of the Wells Fargo Defendants. Nor can this prejudice be undone.

Fourth, pursuant to the terms of his May 2021 Settlement Agreement with Plaintiffs, Mr. Marcum produced the entirety of his laptop containing Lifetrade information. The laptop was provided without his counsel's review and without an inspection for confidential or privileged information. (Declaration of John Marcum, ¶ 6). All of the relevant documents recovered from the laptop were subsequently produced to the parties, including the Wells Fargo Defendants. Thus, Mr. Marcum facilitated Plaintiffs' efforts, ignorant of the fact that by doing so he increased his exposure on a contribution claim.

Finally, Mr. Marcum has not actively participated in fact discovery since his dismissal from this suit, including the depositions of witnesses – many of which might, following review of the deposition transcripts, need to be redeposed. Since Mr. Marcum's dismissal from the case, at least eight depositions appear to have been taken: Depositions of Hugo Carlini, Carlos Wehbi, Martin Miranda, Winston Chang, Sergei Garibian, Michael Thomas, Reginald Dawson and Christopher Young. (Declaration of Arnold Lakind ¶ 2). Not only did he not attend, but Mr. Marcum did not receive notice of these depositions. (Declaration of John Marcum, ¶ 7). Nonetheless, these witnesses – including three Wells Fargo witnesses – may have provided testimony concerning Mr. Marcum. While this prejudice can be overcome by allowing redepositions, that alternative is costly to Mr. Marcum and others. Allowing the contribution

claim to continue notwithstanding Mr. Marcum's absence from such crucial fact discovery is prejudicial to his defense.

In sum, the Wells Fargo Defendants knew of Mr. Marcum's alleged misconduct since 2017. As Judge Parker found, they can offer and have offered no excuse for their six year delay in filing a Third Party Complaint, Mr. Marcum has changed his position during the period of delay, and he has been irreparably prejudiced as a consequence of that change. The Third Party Complaint should be dismissed on the grounds of laches in order to prevent an inequitable outcome.

**POINT IV**

**THE THIRD PARTY COMPLAINT SHOULD BE
DISMISSED BECAUSE THE WELLS FARGO
DEFENDANTS WAIVED THEIR CLAIMS AGAINST JOHN
MARCUM WHEN THEY DID NOT OBJECT TO HIS
DISMISSAL FROM THE CASE AFTER HAVING FAILED
TO FILE ANY CLAIMS AGAINST HIM**

At no point during the six year history of this litigation did the Wells Fargo Defendants

assert any claims against Mr. Marcum or contend that he was a necessary party to this case.

Their overt actions were to the contrary:  they failed to file a cross-claim against him and they

acquiesced to Mr. Marcum's dismissal – presumably aware that, as part of the 2012 Settlement

Agreement, they had no claim against him.  Under these circumstances, the Wells Fargo

Defendants have waived their claims against Mr. Marcum and their Third Party Complaint

should be dismissed.

Waiver is "the voluntary and intentional abandonment of a known right."  *Nassau Trust*

*Co. v. Montrose Concrete Products Corp.*, 56 NY2d 175 (Ct. App. 1982).  Waiver can be

established "by affirmative conduct or by failure to act so as to evince an intent not to claim a

purported advantage."  *IBJ Schroder Bank & Trust Co. v. Fairfield Communities, Inc.*, 178 F.3d

78, 84 (2d Cir. 1999) (quoting *General Motors Acceptance Corp. v. Clifton-Fine Central Sch.*

*Dist.,*  85 N.Y. 2d 232, 236 (1995)).  Courts will look at the parties' conduct when determining if

it intended to abandon its rights, but will not find waiver where a party continuously and overtly

asserts its claim.  *Ibid.*

Here, the Wells Fargo Defendants took no actions that would have informed Mr. Marcum

of their plan to assert a contribution claim against him.  To the contrary, their conduct suggested

the opposite.  They worked with Mr. Marcum on their defense of this matter for the first several

years of this litigation.  And they filed no objections or otherwise oppose Plaintiffs' dismissal of

20

Mr. Marcum from this lawsuit.  Wells Fargo participated in extensive fact discovery and

depositions after Mr. Marcum's dismissal and without Mr. Marcum's participation or

knowledge.  Nor did they inform Mr. Marcum, while they were proceeding with depositions, that

his presence would be prudent.  (Declaration of John Marcum, ¶ 7).  Up until six months ago, the

Wells Fargo Defendants never expressed an intention to hold Mr. Marcum liable for any

judgment potentially rendered against him in this action.  Under these circumstances, Wells

Fargo has waived the right to file a Third Party Complaint in contribution against John Marcum.

## CONCLUSION

For the foregoing reasons, John Marcum respectfully requests that this Court grant the within motion, and dismiss the Third Party Complaint filed against him.

Dated:  February 1, 2023

Respectfully submitted,

 s/Arnold C. Lakindr
Arnold C. Lakind
Janine G. Bauer
SZAFERMAN, LAKIND,
 BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ  08648
Telephone: (609) 275-0400
Facsimile: (609) 275-4511
alakind@szaferman.com
jbauer@szaferman.com

Attorneys for Third Party Defendant,
 John Marcum

22