USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/4/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

IN RE LIFETRADE LITIGATION:

OPINION AND ORDER ON MOTION
FOR PROTECTIVE ORDER

17-CV-2987 (JPO)(KHP)

-------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Defendants Wells Fargo Bank, N.A., Wells Fargo Bank Northwest, N.A. (n/k/a Wells Fargo Trust Company, N.A.) ("Wells Fargo Utah"), Wells Fargo Delaware Trust Company, N.A. ("Wells Fargo Delaware"), and ATC Realty Fifteen, Inc. ("ATC," and together, the "Wells Fargo Defendants") have moved for a protective order pursuant to Federal Rule of Civil Procedure 26(c) to limit the scope of certain 30(b)(6) deposition topics proposed by Plaintiffs. For the reasons set forth below, the motion is granted in part and denied in part.

## FACTUAL BACKGROUND

      The Court assumes familiarity with the facts and does not repeat them here except as necessary for context. Plaintiffs are investors in three funds (the "Lifetrade Funds"). The funds invested in life insurance policies issued by United States citizens but later taken up by third-party settlement providers, which paid the insured a lump sum during their lifetime less than the value of the policy and then continued to pay the premium with the right to collect the full value of the policy upon the insured's death. The funds closed in 2012 because of alleged mismanagement by Roy Smith, Lifetrade's founder and CEO, and John Marcum, a consultant.

      In the years before Lifetrade's closure, the funds did not have sufficient cash to satisfy investors' requests to redeem shares, so Lifetrade entered into a loan agreement with Defendant

Wells Fargo's predecessor for a $500 million credit line with a repayment date of June 15, 2012. By 2012, Lifetrade had an outstanding debt of $205 million while Wells Fargo valued its portfolio of life insurance policies at $302 million. Lifetrade represented to investors that the portfolio was worth $450 million. In March 2012, Lifetrade suspended redemptions and called a shareholder meeting to discuss the pending repayment date and expiring credit line. The Investors chose to seek long-term financing in lieu of transferring Lifetrade's insurance policies to Wells Fargo. When Lifetrade was unable to secure the long-term financing, Wells Fargo announced it would foreclose on the debt. However, in August 2012, Wells Fargo and Lifetrade negotiated a settlement with two Lifetrade executives, Roy G. Smith and John Marcum, where Wells Fargo would acquire Lifetrade Funds' assets.

Plaintiffs contend the settlement was unconscionable because the life insurance policies transferred under the agreement were allegedly worth more at that time than the amount of the debt extinguished. Plaintiffs also allege that the Wells Fargo Defendants aided and abetted Smith's and Marcum's breaches of fiduciary duty by "playing to [Smith and Marcum's] personal vulnerabilities . . . and orchestrating a Settlement Agreement."

## 30(b)(6) DEPOSITION NOTICE

Plaintiffs served identical 30(b)(6) deposition notices on each of various Wells Fargo entities. The notices include 32 topics. The parties met and conferred on the topics but are at an impasse as to certain topics. The parties provided a helpful chart of the proposed topics and counter-proposed topics, which the Court includes as Addenda to this Opinion. The Court will utilize the Plaintiffs' Topic Numbers and Defendants' Counter-Proposed Topic Letters as set forth in the Addenda in this decision.

**DISCUSSION**

1. **Legal Standard Protective Orders**

District courts have "broad discretion to manage the manner in which discovery proceeds." *Diamond v. 500 SLD LLC*, 2022 WL 956262, at *2 (S.D.N.Y. Mar. 30, 2022) (quoting *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003)). A court may issue a protective order to safeguard a party or person "from annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c), "but the moving party bears the burden of establishing good cause for such a protective order." *Rekor Sys., Inc. v. Loughlin*, 2022 WL 488941, at *1 (S.D.N.Y. Feb. 17, 2022) (quoting *Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015)). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (internal quotation marks omitted). Ultimately, "[t]he grant and nature of protection is singularly within the discretion of the district court." *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

2. **Legal Standard Rule 30(b)(6) Depositions**

All 30(b)(6) deposition topics are constrained by Rule 26(b)(3)—meaning that they must seek information relevant to the claims and defenses that is proportional to the needs of the case. Further, the party seeking the deposition must describe the deposition topics with "reasonable particularity." Fed. R. Civ. P. 30(b)(6). "Reasonable particularity" requires the topics listed to be specific as to subject area and to have discernible boundaries. *Winfield v. City of New York*, 2018 WL 840085, *5 (S.D.N.Y. Feb. 12, 2018).

Courts must scrutinize Rule 30(b)(6) deposition topics to ensure they are not a tool for abuse of the discovery process. Provided the topics listed in the notice meet the above criteria,

the corporate defendant must produce someone familiar with the topics listed and, if one person cannot address all the topics, produce persons able to give complete, knowledgeable and binding answers on its behalf. *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 268-69 (2d Cir. 1999), *superseded by statute on other grounds as recognized by Hernandez v. Jrpac Inc.*, 2016 WL 328493, at *35 (S.D.N.Y. June 9, 2016).  If a corporation genuinely cannot provide an appropriate designee because it does not have the information, cannot reasonably obtain it from other sources, and still lacks sufficient knowledge after reviewing all available information, then its obligations under Rule 30(b)(6) cease. *See, e.g.*, *Klorczyk v. Sears, Roebuck & Co.*, 2015 WL 1600299, at *5 (D. Conn. Apr. 9, 2015) (quoting *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012)); *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 38-39 (D. Mass. 2001) (citing Fed. R. Civ. P. 30(b)(6) (requiring testimony only as to "matters known or *reasonably available* to the organization") (emphasis added)).

As this Court has previously recognized, the Rule challenges the propounding party to be specific so that the receiving entity can adequately prepare for a deposition.  The Rule challenges the receiving company to identify people – sometimes multiple people – to answer specific topics, and the burden of preparing for these depositions can be onerous.  Because Rule 26(b)(3) restricts discovery to that which is proportional to the needs of the case, proportionality can be an important principle in limiting the burden of 30(b)(6) depositions while still providing the propounding party with information needed.   Further, in light of the fact that the purpose of a Rule 30(b)(6) deposition is to "streamline the discovery process," *Winfield*, 2018 WL 840085, at*5, the Court is fully within its discretion to limit 30(b)(6) topics to the extent the deposition topics do not achieve that purpose and are unreasonably cumulative or duplicative, the information can be obtained from some other source that is more convenient, less burdensome, or less expensive, or

the burden or expense of the certain deposition topics outweigh the likely benefit of requiring a company to prepare for them, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  See *In re Weatherford Int'l Sec. Litig.*, 2013 WL 2355451, at *4 (S.D.N.Y. May 28, 2013).

### 3. The Deposition Topics

The original deposition notices in this case were overbroad and contain redundant topics. Wells Fargo proposed 12 topics in lieu of 32 in an attempt at consolidating them to something more manageable.  Plaintiffs have agreed to proposed topics B, C, F, G, I, and K.  Therefore, Wells Fargo must produce witnesses for these topics.  To the extent the same witness can answer for each Wells Fargo entity, the witness should testify on behalf of all such entities.  The following is the Court's ruling as to the remaining proposed topics:

- Topic A:  In addition to this topic, when identifying the business units in each Wells Fargo entity that had dealings with Lifetrade or its principals or representatives, Wells Fargo shall produce a witness who can testify as to the relationship of the identified business units and entities to each other and the leadership of these units and entities from 2008 through the date of the sale of the Lifetrade portfolio.

- Topic D:  In addition to this topic, Wells Fargo shall produce a witness who can identify the decisionmaker(s) for the decisions to (1) extend/renew the Lifetrade Loan subject to modified terms, (2) not to further extend the Lifetrade Loan, (3) issue a notice of public sale of the loan portfolio, and (4) enter into the Settlement Agreement in lieu of having a public sale and the reasons for these decisions.  To be clear, the topic as expanded does

not require Wells Fargo to produce a witness regarding its business strategy with respect to the life settlement business/industry generally; rather, the witnesses should talk about the business reasons for decisions specific to management of the Lifetrade Loan and foreclosure on that loan and settlement with Lifetrade.

- Topic 9:  This topic concerns Wells Fargo's relationship with other life settlement businesses and is not focused on the claims in this case.  The Court has already found that discovery into Wells Fargo's seizure of the Berlin Capital and Q Capital life settlement portfolios is not relevant or proportional to the needs of this case, and Plaintiffs fail to offer a persuasive reason to alter this Court's prior decision precluding such discovery. The motion for a protective order is granted as to this topic.

- Topic E:  This topic overlaps with Topic D and the modifications Plaintiffs seek have been addressed in the Court's modification to Topic D above.

- Topic 13:  This topic concerns the motives of Wells Fargo and its business strategy with regard to life settlements.  However, this Court has already held that motive is not an element of the remaining claims against Wells Fargo.   Thus, the topic is not relevant or proportional to the needs of the case.  Plaintiffs do not offer persuasive reasons to revisit this ruling. The motion for a protective order is granted as to this topic.

- Topics 17:   Plaintiffs have failed to explain why this topic is relevant and proportional to the needs of this case.  It does not relate to an element of the claims or any defense and is therefore not an appropriate topic.  The motion for a protective order is granted as to this topic.

- Topic 19: This topic as written is extraordinarily overbroad. Plaintiffs allege that Smith and Marcum violated their fiduciary duties to Lifetrade in specific ways. Plaintiffs could have tailored a topic to ask whether Wells Fargo was aware of specific conduct of Smith and Marcum that Plaintiffs contend constituted the alleged breach of fiduciary duty. However, they did not do this. Plaintiffs can ask fact witnesses for Wells Fargo questions about what they knew about Smith and Marcum's alleged conduct that forms the basis for the allegations of breach of fiduciary duty. The motion for a protective order is granted as to this topic.

- Topic H: Plaintiffs' objections to this topic as narrowed by Wells Fargo have been addressed by the Court in Topic D, as modified by the Court.

- Topic 27: This topic concerns a post-litigation investigation by Wells Fargo into the allegations of the complaint, which is primarily work product and privileged. Wells Fargo's investigation itself is not relevant to the claims and defenses. Rather, the underlying facts about the loan are what is relevant. Further, Plaintiffs merely state that this topic is proportional to the needs of the case without stating why. Thus, their opposition to the motion is unpersuasive. The motion for a protective order is granted as to this topic.

- Topic J: In addition to the topic, Wells Fargo shall provide a witness to testify about its knowledge of any offers to purchase the Lifetrade Portfolio made by Perella Weinberg Partners or other third-party during the servicing of the loan and prior to the 2012 settlement and, if any such offers were made, what the offers were, and whether those offers would have been sufficient to cover the outstanding loan amount and the reasons any offers were rejected (if Wells Fargo knows). The additional information is relevant to

the issue of foreclosure and settlement and whether Lifetrade management had other options other than to settle with Wells Fargo.

- Topic L and Topics 31 and 32:  The way in which Wells Fargo has limited this topic ignores Plaintiff's legitimate interest in understanding the factual basis for Wells Fargo's *in pari delicto* defense.  Plaintiffs are entitled to learn what benefits, if any, Wells Fargo believes the settlement conferred on the Lifetrade Funds, consistent with the Court's decision denying Wells Fargo's motion to dismiss based on the defense of *in pari delicto*. Accordingly, Wells Fargo shall produce a witness to testify on this subject.  To be clear, the questions on this topic must focus on the facts and should not ask for a legal conclusion. Except for this defense, Plaintiffs do not specify what they want to understand about any other affirmative defense raised by Wells Fargo as set forth in Topic 32.  Thus, Topic 32 is overbroad and vague.

**CONCLUSION**

For the reasons set forth above, Wells Fargo's motion is granted in part and denied in part. The deposition topics proposed by Wells Fargo as modified by the Court above shall be the topics on which the 30(b)(6) depositions shall proceed. To the extent the same witness can answer for each Wells Fargo entity, the witness should testify on behalf of all such entities.

Dated: May 4, 2023
      New York, New York

So ordered,

*/s/ Katharine H. Parker*

KATHARINE H. PARKER
United States Magistrate Judge

**ADDENDA**

**<u>In re Lifetrade Litigation, 1:17-cv-02987 (JPO) (KHP)</u>**

**30(b)(6) Topics and Counter-Proposed Topics for the Depositions of Wells Fargo Bank, N.A., ATC Realty Fifteen, Inc., and <u>Wells Fargo Bank Northwest, N.A. (*n/k/a Wells Fargo Trust Company, N.A.*)</u>**

| Topics in Plaintiffs' 30(b)(6) Deposition Notices | Defendants' Counter-Proposed Topics |
|---|---|
| **Topic 1:** Your organizational and reporting structure, and the organizational structures of the other Wells Fargo Defendants, from 2008 to the date of the commencement of this Action. | **Topic A:** Wells Fargo Bank, N.A., ATC, and Wells Fargo Utah will designate one or more witnesses to provide non-privileged testimony identifying the business units of, and the individuals employed by or affiliated with, each such Wells Fargo Defendant who had dealings with Lifetrade or its principals or representatives concerning the Lifetrade Loan, the Settlement Agreement, or the Policies during the relevant time period. |
| **Topic 2:** The identities of all persons employed by or affiliated with You or Wells Fargo who participated in any meetings or business dealings, at any time, concerning Smith, Marcum, any Lifetrade Entity, the Lifetrade Loan, the Lifetrade Portfolio of Policies, and/or any Lifetrade Underwriter. | |
| **Topic 22 (Dup'e of 2, 8, 21):** Your internal meetings and communications and internal meetings and communications within Wells Fargo or any division thereof, respecting the potential seizure of the Lifetrade Portfolio of Policies as repayment of the outstanding debt at any time. | |
| **Topic 23 (Dup'e of 2, 8, 21):** Meetings and/or communications concerning the Lifetrade Funds and/or the Lifetrade Portfolio of Policies between or among You, Wells Fargo and any other person or entity concerning Wells Fargo's decision to buy, sell, transfer, use, or foreclose on the Lifetrade Fund's assets. | |

| | |
|---|---|
| **Topic 3 (Dup'e of 4):** Your or Wells Fargo's business unit or division that acquired and managed the Lifetrade Portfolio of Policies pursuant to the Settlement Agreement or 2012. | **Topic B:** Well Fargo Bank, N.A., and ATC will designate one or more witnesses to provide non-privileged testimony concerning the following subjects that post-date the Settlement Agreement: (a) payment of premiums; (b) receipt of death benefits, (c) readily quantifiable costs associated with management of the Policies; (d) the sale of the Policies; (e) proceeds from the sale of the policies; (f) the business units of, and individuals employed by or affiliated with Well Fargo Bank, N.A., and ATC involved with the aforementioned subjects; and (g) documents concerning the aforementioned subjects each such Wells Faro Defendant already identified by Bates range for Plaintiffs. |
| **Topic 4:** The administration and/or management by You or Wells Fargo of the Lifetrade Portfolio of Policies, including identification of each policy, dates of maturity of each policy, dates and amounts of premiums paid by Wells Fargo for each policy, and dates and amounts of proceeds or other benefits received by Wells Fargo for each policy within the Portfolio, from the time Wells Fargo acquired the Portfolio in 2012 until the time Wells Fargo sold the Portfolio or any portion thereof. | |
| **Topic 5:** The sale of the Lifetrade Portfolio of Policies or any portion thereof by You or any Wells Fargo entity, including the proceeds Wells Fargo received for the sale of each life insurance policy comprising or within the Lifetrade Portfolio of Policies. | |
| **Topic 7:** The review or valuation of the performance of the Lifetrade Portfolio by You, Wells Fargo, or any third party after Wells Fargo's 2012 acquisition of the Portfolio. | |
| **Topic 6:** The valuation of the Lifetrade Funds, and assets comprising those Funds, by You, Wells Fargo, or any third party at any time.<br><br>**Topic 20 (Dup'e of 6):** Lifetrade's periodic Net Asset Value ("NAV") and/or reporting of the performance of the Lifetrade Funds. | **Topic C:** Well Fargo Bank, N.A., and ATC will designate one or more witnesses to provide non-privileged testimony concerning the value of the Policies during the relevant time period. |

| | |
|---|---|
| **Topic 8:** The decision by You or any Wells Fargo entity to foreclose on or otherwise acquire the Lifetrade Portfolio of Policies. | **Topic D:** Wells Fargo Bank, N.A. will designate one or more witnesses to provide non-privileged testimony concerning Wells Fargo Bank, N.A.'s decision in 2012 to: (a) not further extend the Lifetrade Loan; (b) issue a notice of public sale dated August 8, 2012; and (c) enter into the Settlement Agreement. |
| **Topic 11 (Dup'e of 8):** The repayment by Lifetrade of the Lifetrade Loan including the timing and amount of each periodic payment made by Lifetrade from 2008 through August 2012. | |
| **Topic 15 (Dup'e of 8, 10):** Meetings and/or communications concerning the subject of foreclosing on the Lifetrade Loan at any time, including meetings/communications concerning decisions to extend the maturity date of the loan, or to refrain from such extensions. | |
| **Topic 22 (Dup'e of 2, 8, 21):** Your internal meetings and communications and internal meetings and communications within Wells Fargo or any division thereof, respecting the potential seizure of the Lifetrade Portfolio of Policies as repayment of the outstanding debt at any time. | |
| **Topic 23 (Dup'e of 2, 8, 21):** Meetings and/or communications concerning the Lifetrade Funds and/or the Lifetrade Portfolio of Policies between or among You, Wells Fargo and any other person or entity concerning Wells Fargo's decision to buy, sell, transfer, use, or foreclose on the Lifetrade Fund's assets. | |
| **Topic 24 (Dup'e of 8, 10, 21):** The original, executed and/or draft versions, including amendments and modifications of: (a) The 2008 agreement and subsequent extensions for the $500M debt facility for Lifetrade, including the 2010 reduction and any other modification of the debt facility; (b) The 2010 Assignment and Assumption Agreement; (c) The 2010 Variable Funding Note; (d) The Nondisclosure Agreement related to Wells Fargo's acquisition of the Lifetrade Portfolio; (e) The March 25, 2011 reorganization of the Lifetrade Fund. BV involving Lifetrade Life Settlements Ltd.; (f) The March 28, 2011 Loan and Security Agreement; (g) The August 8, 2012 Foreclosure Notice; (h) The Settlement Agreement of August 14, 2012; and (i) The Bill of Sale concerning the Lifetrade Funds. | |

| | |
|---|---|
| **Topic 9:** *The decision by You or any Wells Fargo entity to foreclose on any loan or debt facility between Wells Fargo and any life settlement business, including but not limited to Berlin Capital, Inc. and Q Capital.* | *N/A*<br><br>*The Wells Fargo Defendants object to this topic and will not be producing a witness for any of the Wells Fargo Defendants. See Memorandum of Law in Supp. of Mtn. for Protective Order at Part I.A.* |
| **Topic 10:** Wells Fargo's acquisition of the Lifetrade Loan from Wachovia, and each and every subsequent loan, debt facility or other agreement, and any amendment, and/or modification thereof, that You or any Wells Fargo entity offered to or entered into with any Lifetrade Entity, or any of Lifetrade's managers, including Smith and/or Marcum.<br><br>**Topic 12 (Dup'e of 10):** The administration of the Lifetrade Loan or debt facility from inception to foreclosure, including but not limited to: (a) decisions to renew the facility; (b) the credit limit or amount of the loan at renewal; (c) the interest rate charged for the loan or debt facility; and (d) the fees charged in association with such loan or debt facility.<br><br>**Topic 15 (Dup'e of 8, 10):** Meetings and/or communications concerning the subject of foreclosing on the Lifetrade Loan at any time, including meetings/communications concerning decisions to extend the maturity date of the loan, or to refrain from such extensions.<br><br>**Topic 24 (Dup'e of 8, 10, 21):** The original, executed and/or draft versions, including amendments and modifications of: (a) The 2008 agreement and subsequent extensions for the $500M debt facility for Lifetrade, including the 2010 reduction and any other modification of the debt facility; (b) The 2010 Assignment and Assumption Agreement; (c) The 2010 Variable Funding Note; (d) The Nondisclosure Agreement related to Wells Fargo's acquisition of the Lifetrade Portfolio; (e) The March 25, 2011 reorganization of the Lifetrade Fund. BV involving Lifetrade Life Settlements Ltd.; (f) The | **Topic E:** Wells Fargo Bank, N.A. will designate one or more witnesses to provide non-privileged testimony concerning Wells Fargo Bank, N.A.'s management of, and extensions or modifications to, the Lifetrade Loan during the relevant time period. |

| | |
|---|---|
| March 28, 2011 Loan and Security Agreement; (g) The August 8, 2012 Foreclosure Notice; (h) The Settlement Agreement of August 14, 2012; and (i) The Bill of Sale concerning the Lifetrade Funds. | |
| **Topic 13:** *Your or Wells Fargo's position from 2008 through 2012 concerning Wells Fargo investing in life settlement transactions generally, and/or in lending to businesses that invested in life settlements.* | *N/A*<br><br>*The Wells Fargo Defendants object to this topic and will not be producing a witness for any of the Wells Fargo Defendants. See Memorandum of Law in Supp. of Mtn. for Protective Order at Part I.A.* |
| **Topic 16:** *The transfer of ownership of the Portfolio of Policies from the Lifetrade Fund B.V. to Lifetrade Life Settlements Limited.* | **Topic F:** Wells Fargo Utah will designate one or more witnesses to provide non-privileged testimony concerning Well Fargo Utah's role during the relevant time period as Managing Trustee under the Trust Agreement dated August 13, 2010 and any subsequent amendments thereto, including Wells Fargo Utah's role in connection with the execution of the Settlement Agreement by LT Opportunity Trust. |
| **Topic 17:** *The issuance of debt securities from Lifetrade Life Settlements Limited to LT Investments, Inc.* | *N/A*<br><br>*The Wells Fargo Defendants object to this topic and will not be producing a witness for any of the Wells Fargo Defendants. See Memorandum of Law in Supp. of Mtn. for Protective Order at Part I.B.* |
| **Topic 18:** *You or any Wells Fargo Entity's activities as Custodian of the Lifetrade Loan.* | **Topic G:** Wells Fargo Bank, N.A. will designate one or more witnesses to provide non-privileged testimony concerning its role as Custodian in connection with the Lifetrade Loan. |
| **Topic 19:** *Information acquired by You or any Wells Fargo Entity respecting any potential bribes, commissions, money laundering, theft, embezzlement or misappropriation of money or assets by Smith, Marcum, or any Lifetrade Entity, and any meetings between or among You and Wells Fargo on these subjects.* | *N/A*<br><br>*The Wells Fargo Defendants object to this topic and will not be producing a witness for any of the Wells Fargo Defendants. See Memorandum of Law in Supp. of Mtn. for Protective Order at Part I.B.* |

| | |
|---|---|
| **Topic 21:** The negotiation, drafting and signing of the 2012 Settlement Agreement, and each and every provision of the Settlement Agreement including but not limited to the provision prohibiting Lifetrade Management from revealing Wells Fargo's motivations to Lifetrade shareholders or investors. | |
| **Topic 22 (Dup'e of 2, 8, 21):** Your internal meetings and communications and internal meetings and communications within Wells Fargo or any division thereof, respecting the potential seizure of the Lifetrade Portfolio of Policies as repayment of the outstanding debt at any time. | |
| **Topic 23 (Dup'e of 2, 8, 21 ):** Meetings and/or communications concerning the Lifetrade Funds and/or the Lifetrade Portfolio of Policies between or among You, Wells Fargo and any other person or entity concerning Wells Fargo's decision to buy, sell, transfer, use, or foreclose on the Lifetrade Fund's assets. | **Topic H:** Wells Fargo Bank, N.A., ATC, and Wells Fargo Utah will designate one or more witnesses to provide non-privileged testimony concerning the negotiation and terms of the Settlement Agreement. |
| **Topic 24 (Dup'e of 8, 10, 21):** The original, executed and/or draft versions, including amendments and modifications of: (a) The 2008 agreement and subsequent extensions for the $500M debt facility for Lifetrade, including the 2010 reduction and any other modification of the debt facility; (b) The 2010 Assignment and Assumption Agreement; (c) The 2010 Variable Funding Note; (d) The Nondisclosure Agreement related to Wells Fargo's acquisition of the Lifetrade Portfolio; (e) The March 25, 2011 reorganization of the Lifetrade Fund. BV involving Lifetrade Life Settlements Ltd.; (f) The March 28, 2011 Loan and Security Agreement; (g) The August 8, 2012 Foreclosure Notice; (h) The Settlement Agreement of August 14, 2012; and (i) The Bill of Sale concerning the Lifetrade Funds. | |

| | |
|---|---|
| **Topic 26:** Your document retention policies relevant to this action. | **Topic I:** One or more witnesses will be designated by the relevant Wells Fargo Defendant to provide non-privileged testimony concerning how certain documents (that may be reasonably identified by Plaintiffs in their opposition to this motion) were maintained in the normal course of business. |
| **Topic 27:** *Internal investigations by You or any Wells Fargo entity concerning Plaintiff's allegations.* | N/A<br><br>*The Wells Fargo Defendants object to this topic and will not be producing a witness for any of the Wells Fargo Defendants. See Memorandum of Law in Supp. of Mtn. for Protective Order at Part I.B.* |
| **Topic 14 (Dup'e of 28, 29):** Offers to purchase the Lifetrade Portfolio made by Perella Weinberg Partners or any other third party, prior to the 2012 Settlement Agreement, and Your or Wells Fargo's responses to such offers.<br><br>**Topic 28:** Meetings and/or correspondence between or among You and/or any Wells Fargo Entity regarding refinancing of the Lifetrade loan at any time before or after the Settlement Agreement of 2012.<br>**Topic 29:** Meetings and/or correspondence between or among You and/or any Wells Fargo Entity and any third party, including but not limited to: Smith, Marcum, anyone affiliated with Lifetrade, any Plaintiff, investor or broker, any bank or lending institution, or anyone else regarding refinancing of the Lifetrade Loan at any time before or after the Settlement Agreement of 2012. | **Topic J:** Wells Fargo Bank, N.A. will designate one or more witnesses to provide non-privileged testimony concerning its knowledge of Lifetrade's efforts since 2011 to refinance the Lifetrade Loan. ATC will designate one or more witnesses to provide non-privileged testimony concerning its knowledge of Lifetrade's efforts to reacquire the Policies after the Settlement Agreement. |
| **Topic 30:** Meetings and/or correspondence with Smith or anyone else affiliated with any Lifetrade Entity, and You or Wells Fargo after the execution of the Settlement Agreement in August 2012. | **Topic K:** Wells Fargo Bank, N.A. and ATC will designate one or more witnesses to provide non-privileged testimony concerning communications generally with Lifetrade or any of its principals or representatives after the execution of the Settlement Agreement. |

| | |
|---|---|
| **Topic 31:** Facts on which you will rely in support of your *in pari delicto* defense. | **Topic L**: Without limitation to every fact the Wells Fargo Defendants may rely upon in connection with the *in pari delicto* defense, Wells Fargo Bank, N.A. will designate one or more witnesses to testify about (i) the debt extinguished by the Settlement Agreement; (ii) the Option to Purchase under §5.1 of the Settlement Agreement; (iii) the Net Proceeds under §11.1 of the Settlement Agreement; and (iv) Lifetrade's efforts to reacquire the Policies after the Settlement Agreement. |
| **Topic 32:** *Facts on which you will rely in support of any affirmative defense.* | N/A<br><br>*The Wells Fargo Defendants object to this topic and will not be producing a witness for any of the Wells Fargo Defendants. See Memorandum of Law in Supp. of Mtn. for Protective Order at Part I.C.* |

## Annex A

To avoid undue repetition in the main table above, Plaintiffs' Topic 25, which is duplicative of as many as 7 other topics, is listed separately in the below table in this Annex A.

| Topics in Plaintiffs' 30(b)(6) Deposition Notices | Duplicative of Topic(s) |
|---|---|
| **Topic 25:** Meetings and/or communications concerning the Lifetrade Funds, Lifetrade Entities, Lifetrade Loan, and/or Lifetrade Portfolio of Policies between or among You, Wells Fargo, and any other person or entity, including but not limited to: (a) Wachovia, or any person associated with Wachovia; (b) Roy Smith, or any person associated with Roy Smith; (c) John Marcum, or any person associated with John Marcum; (d) S&P, or any person associated with S&P; (e) Milliman, Inc., or any person associated with Milliman, Inc.; (f) AVS, or any person associated with AVS; (g) ITM 21st Services or any person associated with ITM 21st Services; (h) Any Lifetrade Entity; (i) KPMG; (j) HBM; (k) Any Lifetrade Underwriter; (l) Any Plaintiff or other investor; (m) Any broker. | Duplicative of Plaintiffs' Topics 2, 6, 7, 8, 10, 21, and 28 as to Wells Fargo Bank, N.A. and thus captured by defendants' counter-proposed Topics A, B, C, D, E, H and J.<br><br>Duplicative of Plaintiffs' Topics 2, 6, 7, 21, and 28 as to ATC and thus captured by defendants' counter-proposed Topics A, B, C H and J.<br><br>Duplicative of Plaintiffs' Topics 2 and 21 as to Wells Fargo Utah and thus captured by defendants' counter-proposed Topic A and H. |