UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| IN RE LIFETRADE LITIGATION | 17-CV-2987 (JPO) |
| This Document Relates to: All Actions | OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Presently before the Court are three motions: (1) Wells Fargo's early motion for summary judgment on the statute of limitations and lack of derivative standing (ECF No. 951); (2) Plaintiffs' early motion for partial summary judgment striking Wells Fargo's affirmative defenses (ECF No. 982); and (3) John Marcum's motion to dismiss Wells Fargo's third-party complaint (ECF No. 972).

The Court presumes familiarity with this case. For a factual background of the case, *see Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019).

## I.     Legal Standards

### A.     Wells Fargo's and Plaintiffs' Cross Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

When there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the

party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

### B. Marcum's Motion to Dismiss Wells Fargo's Third-Party Complaint

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). When evaluating whether a complaint meets these requirements, "the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

"[A] Rule 12(b)(6) motion must be resolved by looking only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken." *Rhee-Karn v. Burnett*, No. 13 Civ. 6132, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014) (citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).

## II. Discussion

### A. Timeliness of Plaintiffs' Claims

The New York Civil Practice Law and Rules ("N.Y. C.P.L.R."), call for either a three-year or a six-year limitations period for a breach of fiduciary duty claim depending on certain characteristics of the claim. The rule governing the standard claim of breach of fiduciary duty is that "the applicable limitations period depends on the substantive remedy that the plaintiff

seeks." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009).  If the remedy sought is "purely monetary," courts construe the suit as alleging "injury to property" within the meaning of N.Y. C.P.L.R. § 214(4), and a three-year limitations period applies.  *Id.*  But if the complaint seeks equitable relief, a six-year limitations period applies, pursuant to N.Y. C.P.L.R. § 213(1).  *Id.*

Two more specific rules supplant the general rule in particular circumstances.  First, pursuant to N.Y. C.P.L.R. § 213(7), an action by or on behalf of a corporation against a "present or former director, officer or stockholder" for breach of fiduciary duty is subject to a six-year limitations period.  *See Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 434–35 (S.D.N.Y. 2015) (citing N.Y. C.P.L.R. § 213(7)); *In re 1st Rochdale Coop. Grp., Ltd.*, No. 07 Civ. 7852(DC), 2008 WL 170410, at *3 (S.D.N.Y. Jan. 17, 2008) ("[A] six-year statute of limitations applies to claims on behalf of a corporation against its officers and directors for breach of fiduciary duty.").  Second, pursuant to N.Y. C.P.L.R. § 213(8), claims of "breach of fiduciary duty based on fraud are generally subject to six-year statutes of limitations."  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 & n.3 (2d Cir.2013) (citing N.Y. C.P.L.R. § 213(8)).

In determining whether the relief sought is monetary or equitable for purposes of the N.Y. C.P.L.R., courts "look[] to the reality, rather than the form, of th[e] action."  *IDT Corp.*, 12 N.Y.3d at 139–40 (*citing Paver & Wildfoerster v. Catholic High School Assn.*, 38 N.Y.2d 669, 674 (1976)).

Plaintiffs argue that their derivative aiding and abetting claim is timely pursuant to the six-year statute of limitations under N.Y. C.P.L.R. § 213(7).  Wells Fargo argues that Plaintiffs' aiding and abetting claim does not fall under N.Y. C.P.L.R. § 213(7) because Wells Fargo is not a "present or former director, officer or stockholder," and therefore, the claim is time-barred

3

pursuant to the three-year statute of limitations under N.Y. C.P.L.R. § 214(4) for claims seeking money damages.

This Court previously determined that Plaintiffs' derivative fiduciary breach claims against Smith and Marcum were subject to N.Y. C.P.L.R. § 213(7). *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 295 (S.D.N.Y. 2019). New York courts have held that a claim that a defendant aided and abetted a tort is governed by the same statute of limitations applicable to the underlying tort. *See Balta v. Ayco Co.*, LP, 626 F. Supp. 2d 347, 359 (W.D.N.Y. 2009) ("The statute of limitations for a claim of aiding and abetting a breach of fiduciary duty is the same limitations period that would apply to the underlying breach."); *Pomerance v. McGrath*, 124 A.D.3d 481, 484, 2 N.Y.S.3d 436 (1st Dep't 2015); *Wimbledon Fin. Master Fund, Ltd. v. Hallac*, 192 A.D.3d 617, 618, 146 N.Y.S.3d 18 (1st Dep't 2021); *Monaghan v. Ford Motor Co.*, 71 A.D.3d 848, 850, 897 N.Y.S.2d 482, 484 (1st Dep't 2010). Therefore, Plaintiffs' derivative claim against Wells Fargo for aiding and abetting Smith and Marcum's breach of fiduciary duty is also subject to the six-year limitations period under N.Y. C.P.L.R. § 213(7) and is not time-barred.

### B. Plaintiffs' Standing to Bring Derivative Claims

The issue of . . . whether claims should be brought directly or derivatively, is a question of state law" and "a federal court adjudicating questions of state law must apply the choice of law principles of the forum state." *Seidl v. Am. Century Cos, Inc.*, 713 F. Supp. 2d 249, 255 (S.D.N.Y. 2010) (citing *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006)).

In its motion presently before the Court, Wells Fargo argues that under New York choice of law principles, the internal affairs doctrine applies to Plaintiffs' derivative claims. (ECF No. 952 at 15.) "The internal affairs doctrine is a conflict of laws principle which recognizes that

only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (citing Restatement (Second) of Conflict of Laws § 302, Comment *b*, pp. 307–08 (1971)).  The internal affairs doctrine "typically requires a court to consider the law of the place of incorporation to decide a shareholder standing issue." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 400 n.8 (S.D.N.Y. 2010) (citation omitted); *Ezrasons, Inc. v. Rudd*, 217 A.D.3d 406, 407 (2023) (noting that it is a "longstanding principle" that the internal affairs doctrine applies to derivative actions).  The internal affairs doctrine is inapplicable here: the doctrine "does not apply to those defendants who are not current officers, directors, and shareholders." *Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*, 118 A.D.3d 422, 422 (1st Dep't 2014).

Even if the internal affairs doctrine were applicable here, "the Second Circuit has endorsed a more flexible approach in place of applying the [internal affairs] doctrine as a bright-line rule in New York." *Anwar*, 728 F. Supp. 2d at 400 n.8 (citing *Norlin Corp. v. Rooney,* 744 F.2d 255, 263 (2d Cir.1984) (discussing considerations that may override application of the internal affairs doctrine)).  This flexible approach is applied as an "interest analysis," in which New York courts apply the law of the "jurisdiction with the greatest interest in the specific issue under consideration." *Koury v. Xcellence,* 649 F.Supp. 2d 127, 135 (S.D.N.Y.2009) (internal quotation marks and citation omitted).

The Second Circuit has held that for conduct-regulating rules, the place of the wrongful conduct will "generally [have] superior 'interests in protecting the reasonable expectations of the parties who relied on [the laws of that place] to govern their primary conduct and in the

5

admonitory effect that applying its law will have on similar conduct in the future.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 51 (2d Cir. 2013) (per curiam) (internal quotation marks omitted) (alteration in original) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684–85 (N.Y. 1985)); *see also Niedernhofer v. Wittels*, No. 17-CV-4451, 2018 WL 3650137, at *8 (S.D.N.Y. July 31, 2018) ("[I]n the context of conduct-regulating rules, where the wrongful conduct and the injury occur in different states, the law of the state where the conduct occurred will typically apply."). Wells Fargo's conduct occurred entirely within the United States. (ECF No. 985 ¶¶ 173-180.) Therefore, under an interest analysis for conduct-regulating rules, the United States has a superior interest, and United States law will apply.

Wells Fargo argues that "even if a U.S. jurisdiction has a greater interest in having its laws applied to a claim . . . no U.S. jurisdiction has a greater interest in the question of standing than the jurisdictions of the funds' incorporation." (ECF No. 993 at15 n.10.) Given that the internal affairs doctrine is inapplicable here, the Court is unpersuaded by this argument. The interest analysis for conduct-regulating rules points to the application of United States law.

Moreover, Wells Fargo is judicially estopped from adopting a position contrary to a position that it benefitted from in an earlier phase of this litigation. "[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (first quoting *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8 (2000); then citing 18 Moore's Federal Practice § 134.30, p. 134–62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); and then citing 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent

6

any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory")).

Wells Fargo previously argued that the interest analysis pointed to New York or Delaware law, and that "[u]nder both New York and Delaware law, each of Plaintiffs' state law claims can only be asserted derivatively." (ECF No. 89 at 23.) Wells Fargo does not deny that it previously took this position. (ECF No. 993 at 15 n.10.) Plaintiffs chose not to rebut this argument, and the Court treated Plaintiffs' aiding and abetting and unconscionability claims as purely derivative. *Aviles*, 380 F. Supp. 3d at 299. In its motion presently before the Court, Wells Fargo argues, in direct contradiction to its prior position, that it is not New York or Delaware law that governs whether Plaintiffs can bring individual or derivative claims, but rather, the law of Curaçao and the British Virgin Islands. The Court concludes that Wells Fargo is judicially estopped from adopting this position given that Wells Fargo benefitted from taking a contradictory position in an earlier phase of litigation.

      **C.**      **Marcum's Motion to Dismiss Wells Fargo's Third-Party Complaint**

Marcum argues that Wells Fargo's third-party complaint asserting a contribution claim should be dismissed because the complaint (1) fails to state a plausible contribution claim, (2) is barred by the Limited Release in the 2012 Settlement Agreement, and (3) is barred under the doctrine of laches.

The Court concludes that Wells Fargo's third-party complaint plausibly alleges a contribution claim. Wells Fargo's third-party complaint arises from the same underlying factual allegations as Plaintiffs' claims against Wells Fargo. (ECF No. 937 ("Third-Party Compl.") ¶ 2; ECF No. 937-1.) Wells Fargo's contribution claim rests on the contention "[t]hat if any Wells Fargo Defendant is held liable to Plaintiffs, such liability would arise out of the active,

affirmative, negligent and careless acts or conduct, and/or omissions, and/or violations, of Mr. Marcum." (Third-Party Compl. ¶ 15.)  Wells Fargo's contribution claim is plausible given that Plaintiffs cannot succeed on their aiding and abetting claim against Wells Fargo without proving underlying misconduct by Marcum.  Therefore, Wells Fargo's third-party complaint plausibly alleges a contribution claim.

Next, Marcum argues that Wells Fargo's contribution claim should be dismissed because it is barred by the Settlement Agreement's Limited Recourse provision under §13.17(a).  (ECF No. 175-1 ("Settlement Agreement") at §13.17(a).)  The Settlement Agreement's Limited Recourse Provision applies to "(i) any officers, directors, employees or agents of Lifetrade Ireland, (ii) any incorporator of Lifetrade Ireland, or (iii) any past, present, or future stockholder, or other owner of any equity interest in Lifetrade Ireland (it being understood and agreed that notes or instruments issued to Lifetrade Fund do not constitute equity interests), excluding Lifetrade Fund, LAM Curacao, the Borrower or any affiliate or subsidiary thereof whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise." (Settlement Agreement at §13.17(a).)

"A release will not be given effect unless it contains an 'explicit, unequivocal statement of a present promise to release [a party] from liability.'"  *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001) (quoting *Bank of Am. Nat. Tr. & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 713 (2d Cir. 1985)).  "Moreover, because the 'law looks with disfavor upon agreements intended to absolve [a party] from the consequences of his [wrongdoing],' a release which purports to excuse a party from responsibility for misconduct is subject to the 'closest of judicial scrutiny.'"  *Golden Pac. Bancorp*, 273 F.3d at 515 (quoting *Abramowitz v. N.Y. Univ. Dental Ctr., Coll. of Dentistry*, 494 N.Y.S.2d 721, 723 (2d Dep't 1985) (internal citations omitted)).

8

Under this standard, an ambiguous release may not form the basis for a motion to dismiss. *Info. Superhighway, Inc. v. Talk Am., Inc.*, 274 F. Supp. 2d 466, 470 (S.D.N.Y. 2003).

Wells Fargo and Marcum agree that the Recourse Provision applies only to Lifetrade Ireland.  Marcum argues, however, that through a convoluted string of relationships, he falls under this provision.  According to Marcum, Lifetrade Ireland is synonymous with Lifetrade Settlements Limited, which is an alter ego of the Lifetrade Fund; LMC NV and LMC LLC were the investment manager consultants to the Lifetrade Fund.  And because Marcum is alleged to be an owner of LMC NV and LMC LLC, he "is a stockholder of the owner of an equity interest in Lifetrade Ireland (LMC MV and LMC LLC)."  (ECF No 979 at 13.)  This convoluted string of relationships can hardly be considered an "explicit, unequivocal statement" releasing Marcum from personal liability.

Furthermore, the Limited Recourse provision may even expressly preclude Marcum's release.  The Limited Resource provision excludes the Lifetrade Fund or any affiliate or subsidiary from the "owner[s] of an equity interest in Lifetrade Ireland" that may benefit from that provision. (Settlement Agreement at §13.17(a).)  Marcum's only connection to Lifetrade Ireland, his connection to the Lifetrade Fund, makes him ineligible for the protections of the Limited Recourse provision.  At best for Marcum, under the "closest of judicial scrutiny," the Limited Recourse provision is ambiguous, and therefore "may not form the basis for a motion to dismiss." *Info. Superhighway*, 274 F. Supp. 2d at 470.

Marcum raises two final arguments, both of which the Court rejects.

First, Marcum invokes the doctrine of laches, arguing that Wells Fargo's delay in filing the third-party complaint prejudiced Marcum.  The Court disagrees.  Marcum has been involved in the litigation, has produced all documents that he has, has voluntarily agreed to be deposed,

and contemplates having extensive involvement through trial. (ECF No. 922 ("Magistrate Judge Parker Report") at 8.) Given that Wells Fargo's liability to Plaintiffs is contingent on Plaintiffs first establishing Marcum's own wrongdoing, and that Marcum would be subject to a contribution claim by Wells Fargo in a separate action if not in this one, the Court concludes that it would be more efficient and appropriate to resolve liability and contribution in this action. In addition, the Court rejects Marcum's argument that his re-introduction into this case would cause undue delay in discovery. (Magistrate Judge Parker Report at 7-8.)

Second, Marcum argues that Wells Fargo waived the claims against him when Wells Fargo did not object to Marcum's dismissal from the case. The Court is unpersuaded by this argument. To begin with, Marcum does not dispute that Wells Fargo has brought its contribution claim before the statute of limitations has run. (ECF No. 1002 at 6.) Wells Fargo has impleaded Marcum before a finding of liability. Moreover, this is not the first time Wells Fargo has asserted its contribution claim in this litigation as Wells Fargo asserted an affirmative defense of contribution in its answer. (ECF No. 289 at 74.)

### III. Conclusion

For the foregoing reasons, Wells Fargo's early motion for summary judgment on the statute of limitations and lack of derivate standing is DENIED; Plaintiffs' early motion for partial summary judgment striking the Wells Fargo's affirmative defenses respecting timeliness and standing is GRANTED; and John Marcum's motion to dismiss Wells Fargo's third-party complaint is DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 951, 972 and 982.

SO ORDERED.

Dated: September 25, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge