```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/13/2023
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

**IN RE LIFETRADE LITIGATION:**

OPINION AND ORDER ON
MOTION FOR A JURY TRIAL

17-CV-2987 (JPO) (KHP)

------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Before this Court is Plaintiffs' motion to designate this action as triable to a jury under Fed. R. Civ. P. 39(a). (ECF No. 1052.) Also before the Court is Wells Fargo[1] Defendants' cross-motion to enforce a jury trial waiver. (ECF No. 1075.) For the reasons set forth below, Plaintiffs' motion is denied and Wells Fargo's motion is granted.

## BACKGROUND

### A. FACTS[2]

Plaintiffs are investors in three funds ("Lifetrade"). The funds invested in life insurance policies issued to individuals but later were taken up by third-party settlement providers, which paid the insureds a lump sum during their lifetime less than the value of the policy and then continued to pay the premium with the right to collect the full value of the policy upon the insureds' death. The funds closed in 2012 because of alleged mismanagement by Former Defendant Roy Smith, Lifetrade's founder and CEO, and Defendant Marcum, a consultant to

---

[1] The "Wells Fargo Defendants" include Wells Fargo Bank, N.A., Wells Fargo Bank Northwest, N.A., Wells Fargo Delaware Trust Company, N.A., and ATC Realty Fifteen, Inc.
[2] The Court presumes a familiarity with the nature and procedural history of this case. For a fuller recitation of the facts underlying this litigation see *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221 (S.D.N.Y. 2019).

the funds.  Plaintiffs also assert Lifetrade management had undisclosed conflicts of interest because certain entities in which Smith and Marcum had an interest were service providers to the funds and received excessive fees and commissions from the funds.  Smith died during the course of this litigation and his estate (the "Smith Estate") was substituted as a Defendant.

In the years before Lifetrade's demise, Lifetrade obtained financing from a Wells Fargo predecessor to ensure sufficient funds to satisfy investors' requests to redeem shares and pay premiums on the policies.  By 2012, Lifetrade had an outstanding debt but insufficient funds to pay the debt.  In March 2012, in light of a June 2012 deadline for repaying its outstanding debt to Wells Fargo, Lifetrade suspended redemptions and called a shareholder meeting to discuss the pending repayment date and expiring credit line.  The Investors chose to seek long-term financing to pay off the debt and continue operating the funds.  However, Lifetrade was unable to secure long-term financing.

Although Wells Fargo announced it would foreclose on the debt instead of pursuing a formal foreclosure proceeding, the parties entered into settlement negotiations.  Ultimately, in August 2012, a settlement was reached ("2012 Settlement").  Under the terms of the settlement, Wells Fargo acquired all of the funds' assets, and released the funds and Smith and Marcum, as individuals, from liability.

The 2012 Settlement also contained a jury waiver provision.  Section 13.14 of the 2012 Settlement states:

> Waiver of Right to Jury Trial.  EACH OF THE PARTIES IRREVOCABLY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY AND ALL SUITS, ACTION OR OTHER PROCEEDINGS IN ANY WAY, MANNER OR RESPECT, ARISING OUT OF OR FROM OR RELATED TO THE SETTLEMENT DOCUMENTS, THE TRANSACTION DOCUMENTS OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION THEREWITH."

(ECF No. 290-1.)

Section 1.2 of the 2012 Settlement defines "Settlement Documents" as the 2012 Agreement, "the Strict Foreclosure Notice, the Foreclosure Documents, the Releases, and the other documents required to be executed by the Lifetrade Parties and the Lender Parties, as applicable, in connection herewith or therewith."  "Transaction Documents" is not defined in the 2012 Agreement, but Section 1.3 of the 2012 Settlement adopts the definition found in the 2008 Loan and Security Agreement.  The 2008 Loan and Security Agreement defines "Transaction Document" in Annex C as the 2008 Loan and Security Agreement and various agreements executed in connection with the Loan Agreement including custody agreement, hedging agreements, subservicing agreement, verification agency agreement, and master escrow agreement among others.  (ECF No. 1079-3.)

Plaintiffs assert that the value of the portfolio transferred to Wells Fargo under the 2012 Settlement exceeded the debt due and seek to recover their losses through this action.  They also assert that Wells Fargo knew that the value of the funds exceeded the debt but took advantage of the situation to take over the portfolio and earn a handsome profit.  They allege that the full terms of the settlement were concealed from investors to the benefit of Smith, Marcum, and Wells Fargo, resulting in a total loss to investors.

## B. RELEVANT PROCEDURAL HISTORY

The first complaint in this action was filed on April 25, 2017.  (ECF No. 5.)  The original complaint asserted claims against various persons and entities including S&P Global, Inc., Roy Smith, various Lifetrade entities, and Wells Fargo.  (*Id.*)  Plaintiffs amended the complaint for the first time on August 10, 2017 to join Marcum and others, including TMF Curacao N.V.

("Equity Trust") as parties. (ECF No. 34.) The complaint was further amended three more times. Plaintiffs initially asserted seven common law claims against Wells Fargo.

The Honorable J. Paul Oetken granted Wells Fargo's motion to dismiss in large part, finding that Plaintiffs did not plausibly allege a viable fraud claim in connection to the 2012 Settlement. However, Judge Oetken declined to dismiss two claims: one, for unconscionability of the 2012 Settlement and, two, for aiding and abetting Smith and Marcum's alleged fiduciary breach. *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 298-307 (S.D.N.Y. 2019). Both claims are brought as derivative claims on behalf of the funds. Judge Oetken found that equity militated against allowing the release of claims provision in the 2012 Settlement to bar the two remaining claims, for unconscionability of the 2012 Settlement and aiding and abetting Smith and Marcum's alleged fiduciary breach, "to the extent that the release arose from a fiduciary breach that the Wells Fargo Defendants knowingly abetted." *Aviles*, 380 F. Supp. 3d at 301-02. He reasoned that an "unscrupulous fiduciary" should not be permitted "to double down on a breach by taking the additional step of validly insulating its third-party co-conspirator from any liability for the breach." *Id.*

Wells Fargo Defendants filed their Answer on May 15, 2020. (ECF No. 289.) Their Answer included defenses of contribution and setoff but did not assert any cross claims. (*See* ECF No. 289, Sixteenth and Nineteenth Defenses.)

Currently, Wells Fargo Defendants, the Smith Estate, and Marcum are the only remaining defendants in the action.[3] Fact discovery, including depositions, was completed in August 2023.

---

[3] Plaintiffs settled with Marcum; however, Marcum is a third-party defendant from whom Wells Fargo seeks contribution for any liability imposed on it. (ECF No. 937.)

**DISCUSSION**

There is no dispute among the parties that both of Plaintiffs' remaining claims arise from the 2012 Settlement and fall within the scope of its jury waiver provision. Plaintiffs argue that the jury waiver is unenforceable, in accordance with Judge Oetken's previous ruling on the motion to dismiss that the 2012 Settlement's release of claims provision was unenforceable against these two claims. *Aviles*, 380 F. Supp. 3d at 301. In the alternative, Plaintiffs argue that the jury waiver is unenforceable because of its "lack of negotiability" and "the parties' radically disparate bargaining power" when the 2012 Settlement was reached. (Pl's Reply Br. 8.) Finally, Plaintiffs assert that both claims are "plainly legal" for Seventh Amendment purposes. Defendant argues that the jury waiver in 2012 Settlement must be enforced because the waiver was made knowingly, intentionally, and voluntarily.

The Seventh Amendment right to a jury trial is governed by federal law. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). The right to a jury trial in a civil matter is "fundamental and a presumption exists against its waiver," but "a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily." *Id.* (citing *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977)). Where a party claims that a contract was induced by fraud, "[u]nless a party alleges that its agreement to waive its right to a jury trial was itself induced by fraud, the party's contractual waiver is enforceable vis-à-vis an allegation of fraudulent inducement relating to the contract as a whole." *Merrill Lynch & Co. Inc.*, 500 F.3d at 188.

**A. EFFECT OF RULING ON RELEASE PROVISION ON JURY WAIVER PROVISION**

Here, Judge Oetken's previous decision that the release of claims provision in the 2012 Settlement is unenforceable does not similarly render the jury waiver unenforceable. Plaintiffs argue that the jury waiver must be invalid for the same reason the release of claims was invalid: the alleged self-dealing and fiduciary breaches of Roy Smith, aided and abetted by Wells Fargo. However, Judge Oetken's ruling was specific to the release of claims provision, finding equity required preventing "fiduciaries who are accused of breaching a fiduciary duty to then insulate themselves and co-conspirators from liability that arises from that breach." *Aviles*, 380 F. Supp. 3d at 301. This equitable consideration is germane to a release of claims, which bars Plaintiffs from bringing a case at all, but is absent here as a jury waiver merely alters how the claims are tried. Enforcing the jury waiver would not "insulate" any Defendant from liability flowing from a breach of a fiduciary duty.

As the Second Circuit discussed in *Merrill Lynch*, if "the litigant does not challenge the [dispute resolution] provision as being the product of fraud, we see no reason to replace the agreed upon mode of dispute resolution with another." *Id.* at 188. In this case, Plaintiffs do not argue that the jury trial waiver specifically was fraudulently induced or that it was unconscionable. Rather, Plaintiffs' claims center on the transfer of life insurance policies through the settlement as unconscionable. (*See* Third Amended Compl. ("TAC"), ECF No. 175.) At no point in this litigation have Plaintiffs' claims focused on the jury waiver provision being unconscionable. Thus, the jury waiver is enforceable. *See, e.g.*, *Airport Mart Inc. v. Dunkin' Donuts Franchising LLC*, 2019 WL 4413052, at *8 (S.D.N.Y. Sept. 16, 2019) (finding a jury

waiver was enforceable where allegations and claims reference the general contractual relationship, and no allegation was made about the jury waiver provision).

Plaintiffs misrepresent the finding in *Merrill Lynch* by stating that *Merrill Lynch* dealt with an arbitration agreement and that Wells Fargo Defendants inappropriately analogize jury waivers to arbitration clauses as opposed to releases.  However, *Merrill Lynch* specifically addressed a contractual jury waiver and states clearly that contractual jury waivers are effective even against a claim that the contract containing the waiver was induced by fraud, unless the party alleges that the agreement to waive a jury trial itself was induced by fraud. Moreover, the Second Circuit in that case analogized jury waivers to arbitration agreements. The Wells Fargo Defendants have not made any improper argument or analogies in this regard.

Plaintiffs also argue that *Johnson v. Nextel*, 660 F.3d 131 (2d Cir. 2011), supports their contention that a jury waiver is not binding because they did not know about the jury waiver and because Marcum and Smith used the contract negotiation to advance their personal interests at the funds' expense.  The decision in *Johnson* did not concern a motion to enforce a jury waiver; rather, it concerned whether the plaintiffs had sufficiently alleged a breach of a fiduciary duty of loyalty to survive a motion to dismiss.  The court mentioned a jury waiver in its decision but did not rule on its enforceability.  Moreover, the facts of that case clearly distinguish it from the present case.  There, plaintiffs alleged that a law firm breached its fiduciary duty of loyalty to plaintiffs by accepting $2 million to convince a class of clients to abandon ongoing legal proceedings and waive their right to a jury trial and punitive damages.

7

In other words, unlike in this case, the claims squarely focused on the improper means through which the jury waiver was obtained.

Finally, Plaintiffs point to a declaration submitted by Marcum in which he listed 16 provisions in the settlement agreement that he says were "coerced and forced" upon Lifetrade at Wells Fargo Defendants' "insistence," one of which was the jury waiver provision. (Marcum Decl. ¶¶ 142-43, ECF No. 1106-1.) Plaintiffs also assert that in Marcum's deposition, Marcum stated his experience was that it would not matter if he objected to a jury waiver. These statements do not allege that the jury waiver itself was unconscionable or induced by fraud but rather describe the manner in which the waiver was made. Therefore, the only remaining question is whether the jury waiver was made knowingly, intentionally, and voluntarily when the 2012 Settlement was reached.

### B. WHETHER JURY WAIVER WAS KNOWING, INTENTIONAL AND VOLUNTARY

To determine whether a contractual waiver of a right to a jury trial was entered into knowingly and voluntarily, Courts consider four factors: "1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver." *Morgan Guar. Trust Co. of New York v. Crane*, 36 F.Supp.2d 602, 603-04 (S.D.N.Y. 1999). The parties here do not dispute that the waiver was conspicuous, or that Lifetrade and its agents had significant business acumen. Instead, Plaintiffs argue the waiver was not negotiable and the parties had unequal bargaining power. The Court agrees that the provision was conspicuous and that

Lifetrade was a sophisticated party, so the Court focuses on the first and third factor in *Morgan Guar. Trust Co. of New York, supra*.

First, the Court finds that the jury waiver was negotiable and, in any case, Lifetrade and its agents never attempted to negotiate the jury waiver. Lifetrade was represented by counsel during the negotiations and successfully negotiated changes to other provisions in the settlement agreement. Therefore, there is no reason to believe that the jury waiver was non-negotiable. Plaintiffs rely entirely on Marcum's testimony that the waiver provision was "coerced and forced upon Lifetrade at the insistence of Wells Fargo[, and that] Lifetrade did not willingly enter into" it. (Marcum Decl. ¶¶ 142-43.) However, courts in this Circuit have routinely found that the fact that a party was represented by counsel and negotiated other aspects of the agreement demonstrates that a jury waiver was negotiable even where the provision was never specifically negotiated. *See Morgan Guar. Trust Co. of New York*, 36 F.Supp.2d at 604; *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 705 (S.D.N.Y. 2011); *Mazzocchi v. Windsor Owners Corp.*, 2022 WL 16840273, at *2 (S.D.N.Y. Oct. 5, 2022).

Notwithstanding Plaintiffs' arguments that Marcum "admitted" that the 2012 Settlement was not meaningfully negotiated, Wells Fargo has demonstrated that Lifetrade negotiated 14 amendments and extensions to the Loan Agreement. Lifetrade also negotiated a number of provisions of the 2012 Settlement, including a Borrower Option that allowed Lifetrade to repurchase policies in the three and a half months following execution of the 2012 Settlement and a Continent Payment pursuant to which Wells Fargo would pay a majority of the net proceeds from a sale of the life insurance policies, if any, during the one year following execution of the 2012 Settlement. (Def.'s Br. 4-5.) Finally, one of the funds,

9

Lifetrade Fund B.V., regularly entered into other agreements with Wells Fargo that contained a jury waiver provision. (Def.'s Br. 5); *See N. Feldman & Son, Ltd. v. Checker Motors Corp.*, 572 F. Supp. 310, 313 (S.D.N.Y. 1983)(enforcing jury waiver where there was evidence parties entered into previous agreements with similar waiver provisions). Thus, the Wells Fargo Defendants have demonstrated that the jury waiver was negotiable and the type of provision agreed to by Lifetrade in other contexts.

Second, the Court finds that while the Wells Fargo Defendants were in a better bargaining position than Lifetrade, the relative bargaining power was not so uneven as to make the agreement to waive a jury trial involuntary. Lifetrade was a sophisticated corporation, a fact that Lifetrade does not dispute, represented by prominent law firms, and Marcum and Smith were educated and business-savvy individuals. The fact that there is an imbalance of power alone is not sufficient to demonstrate that agreeing to a jury waiver was involuntary. *Morgan Guar. Tr. Co. of New York*, 36 F. Supp. 2d at 604 (finding that any difference in bargaining power between a major bank and two individuals was offset by the fact that the two individuals were not "financial neophytes," had established relationship with the bank's officials, and had previously negotiated changes with the bank); see also *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 706 (S.D.N.Y. 2011) (that party was represented by counsel was important factor in finding that jury waiver was knowing and voluntary).

Having determined that the jury waiver is enforceable, and the waiver was made knowingly, intentionally, and voluntarily, the Court does not need to reach the issue of whether Plaintiffs' two remaining claims are legal or equitable in nature.

## CONCLUSION

For the above stated reasons, Plaintiffs' motion to designate this action a triable to a jury at ECF No. 1052 is DENIED and the Wells Fargo Defendants' cross-motion to enforce a jury trial waiver at ECF No. 1075 is GRANTED.

Dated: October 13, 2023
      New York, New York

Respectfully submitted,

*Katharine H Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge